JOHN L. KENNON, d/b/a KENNON ADJUSTMENT COMPANY, Complainant-Appellee, v. COMMERCIAL STANDARD INSURANCE COMPANY, Defendant-Appellant.—376, S. W. (2d) 703.

Western Section. December 6, 1963.

Certiorari Denied by Supreme Court March 5, 1964.

522

Van Dyke & Dunlap, Paris, for appellant.

Aaron Brown, Paris, for appellee.

AVERY, (P.J.,W.S.). This is a suit from the Chancery Court of Henry County based upon an account for services rendered by the complainant below, John L. Kennon, d/b/a Kennon Adjustment Company against the defendant below, Commercial Standard Insurance Company, in an investigation of a claim under the Workmen's Compensation Law of the State of Kentucky, filed by F. C. Faughn against the Murray Auto Parts Company. The total amount of the account is $3,005.62. The original bill alleges that the defendant:

"* * * became indebted to the complainant on an open account for work, labor and services and moneys paid out in connection with certain litigation, investigation conducted by complainant for the defendant as an adjuster, as hereinafter detailed."

The answer admits that the referred to claim which is shown to be No. WC-165266 was referred to the complainant for handling, and the real defense is stated in the following words:

"Defendant admits that it requested the services of the complainant in investigating and disposing of the claim, but denies that said services were of a reasonable value of $2,548.00, or that it was necessary for complainant to accrue out-of-pocket expense so that the total amount for services and expenses would total $3,005.62."

The answer then denies that it agreed to pay claimant that amount and avers it is willing and able to pay complainant reasonable compensation for the services performed in connection with the claim.

The case was tried before Chancellor Wayne A. Cox, on depositions without a jury, and he decreed against the defendant below for $2500.00 and cost. The Chancellor did not file a memorandum opinion, and his decree simply recites:

"* * * complainant, John L. Kennon, d/b/a Kennon Adjustment Company was duly employed by the defendant, Commercial Standard Insurance Company, a foreign corporation domesticated and doing business by virtue of the laws of the State of Tennessee to adjust and represent the defendant in the

protection of their interest in Case No. 165266 occurring on September 24, 1956 at the Murray Auto Parts Company in Murray, Kentucky; that said litigation remained in progress for a period of approximately sixteen (16) months culminating in a decision or award by the Workmen's Compensation Board of the State of Kentucky in the amount of Seven Hundred Thirty-nine Dollars and Seventy-seven ($739.77) Cents. That complainant spent much time and effort, and was out considerable expense, in the representation of the defendant in this cause and that although he submitted his detailed and itemized bill for his services in connection therewith, the defendant refused to recognize same or pay the reasonable value of the services which was rendered defendant. That the complainant's services to the defendants are of the reasonable value of Twenty-five Hundred ($2500.00) Dollars, inclusive of hours spent in investigation, out of pocket expenses, office expenses, automobile expenses, long distance telephone calls and that the defendant has paid no amount whatsoever to the complainant for such services.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY the Court that the complainant, John L. Kennon, d/b/a Kennon Adjustment Company, have and recover of the defendant, Commerical Standard Insurance Company, the sum of Two Thousand Five Hundred ($2,500.00) Dollars, and all the costs of the cause, for all of which execution is awarded."

Defendant prayed an appeal from that decree, which was granted to this Court and has been perfected as

provided by law. The error assigned in this Court is as follows:

"As assignment of error, appellant cites the failure of the learned Chancellor to give sufficient weight to the testimony offered by appellant as to the actual value of appellee's services, as compared with the weight given appellee's unsubstantiated testimony. Appellant avers that the failure of the learned Chancellor to award appellee the full amount demanded indicates a rejection of appellee's theory of recovery and relegates his claim to one on the basis of quantum meruit, since appellant did not deny the amount of labor and expenses alleged to have been performed and incurred by appellee, and there is no other basis for awarding a reduced amount. This being the case, the appellee's theory of recovery should have been totally disregarded and an award made on the basis of the expert testimony offered by the appellant as to the actual value of the services rendered."

In the beginning we think the statement by counsel relative to the amount allowed by the Chancellor, could not have been on any other theory than that he undertook to arrive at a reasonable value for the services rendered, as rendered, and in a manner shown by the account filed, granting the complainant what he thought was a reasonable value for his services on a quantum meruit basis and thereby reduced the claim by $505.62, for if it was necessary in the investigation of the claim which had been forwarded to complainant to put in the time and incur the expense, as shown by the account filed, there could be no denial of the fact that the charges made, when applied to a per hour basis, a per meal basis, a per mile basis, telephonic and telegraphic expense, are reasonable.

Thus the position the Chancellor took,—since he filed no memorandum of how he arrived at the amount, either disbelieved the amount of services had been rendered as claimed, or he arrived at the conclusion that the services rendered in accord with the account filed, was not necessary in the investigation of the claim. Thus it would appear that the Chancellor either disregarded the expert testimony in its entirety and decided the issue on the basis of the evidence of the complainant alone, for there is no relationship whatever between the highest amount fixed by either of the expert witnesses, as will be shown hereinafter, and the amount of the account as filed by complainant or the amount of the judgment or decree as fixed by the Chancellor.

Regardless of how the Chancellor arrived at his conclusion, the case is here before us to be heard de novo with presumption of the correctness of the Chancellor's decree unless the evidence preponderates against that decree. T. C. A. Section 27-301 and 27-303, and the many cases annotated under T. C. A. Section 27-303.

If we are to consider the testimony of the expert witnesses who were working in the same field of inquiry as the complainant, and in the same area as the complainant works, with four of such experts whose integrity is not questioned, giving testimony as will be hereinafter set out, and it is received as competent evidence in the case, even though it be governed by the rules applied to the testimony of experts, there can be no question but that the testimony and evidence in the case does preponderate against the degree of the Chancellor. This is particularly true in view of the condition of the testimony given by complainant as will be further hereinafter referred to.

The record shows that the file was first sent to complainant on the 18th day of October, 1956 by the Berry Insurance Agency in Murray, Kentucky. It is presumed that this is the agency through which the Workmen's liability insurance was procured by Murray Auto Parts Company.

The itemized account which complainant submitted to defendant and filed herein begins with services allegedly first rendered on October 19, 1956 and the last service rendered is on February 12, 1958, which indicates a period of 16 months from the time he first received the file until his work was finished.

While he has a very long itemized account, he has broken it down as follows:

| | |
|---|---|
| Hours spent 637 @ $4.00 | $2,548.00 |
| Mileage traveled, 2691 @ 8¢ | 215.28 |
| Telephone bills | 76.09 |
| Meals out on investigation | 78.75 |
| Stenographic reports, stationery and postage | 87.50 |
| Total | $3,005.62 |

That total account is minutely itemized in Exhibit 104.

The record shows the two points where the services were performed, Paris, Tennessee and Murray, Kentucky, are only about 25 or 26 miles apart. In fully reviewing this record it is claimed by complainant that that is equivalent to about 52 round trips or 104 one way trips between the two points, Paris, Tennessee and Murray, Kentucky, on this investigation.

As we understand his direct and cross examination, there are at least 150 hours plus that he claims to have put in

in this investigation in order to arrive at the total hours stated, when he cannot state what he did, who he saw nor where he saw them. In other words, he has an open account here and when he begins to answer the question of what he did on these particular trips and dates, his explanation may be found in answers to questions like this:

"Q28—And the statement which I have just referred to you, shows that on October 19, 1956, you spent 10½ hours in Murray and vicinity in connection with this claim; your report shows that all of the statement which you forwarded were taken on October 19, 1956. The statement shows that on October 23, that you spent 8½ hours in Murray in connection with this claim but the file does not indicate your activities on that particular date, do you have any recollection of the services performed on that date?

"A—You might as well ask me what I ate for dinner and who ate with me, I make this statement, the actual time spent in the investigation of the facts, in the investigation of the insurance, tracking down medical reports and collateral investigation of the claimant himself, study of the law of the State of Kentucky, study of the file in various conversations with the various people involved, the writing of reports, evaluation and re-evaluation of the various reports and the facts as they appear and came within the provisions of the Workmen's Compensation Law —that is a statement covering all those items, you can see the manner in which they are listed on the report, the places of activity, as to what the activity actually was, I never kept such a record and wasn't asked about it or to do so by the Standard Insurance

Company; on other cases, matters were handled by that company in the same manner and reported in the same way. After this time, maybe 5½ years, with all the other matters handled through my office at Murray, Kentucky and other places in that State and Tennessee, my memory will not answer these detailed questions.''

\* \* \* \* \* \*

''No, You might go through that entire record, and unless there is a date there I can tie with the Exhibits in this file, I will not be able to answer that question as to any services performed in that given date, if I can tie it to this record, I can tell you what happened.''

In that manner he continued to testify with respect to hours for which he was suing and apparently while he has an itemized statement, he did not keep the record of the names of people he saw on certain dates, nor how long he spent with any one witness, nor whether he saw him at the courthouse, on the highway or on the farm or other places, and so he being the only witness for himself, and with his answers in such a fashion as they are given, and with no better records than he apparently kept, based upon his explanation or lack of it, about all you could actually and factually determine from the whole of his testimony is that he spent 637 hours in investigating this claim, traveled 2,691 miles, had a total of telephone bills which amounted to a certain number of dollars, and that he had meals out on investigation amounting to so many dollars, and that he had stenographic reports, stationery and postage amounting to so many dollars, all summed up to be $3,005.62, but has kept no record showing why all that was necessary.

There are a good number of letters scattered throughout this entire record in which he informs the company of certain facts which he claims to have discovered in connection with this particular situation. This witness, in our effort to explain his labors, testifies that after the claim was turned over to Mr. Wells Overbey, an attorney, in May or June of 1957, he continued to work on the case, and in analyzing what he was doing during that time in response to a question on cross examination by Mr. Dunlap, the witness apparently irritated, said:

"* * * Have you ever read that record, Mr. Dunlap? You will find that we engaged in considerable activity after Wells Overbey was employed and that brought on that activity after the hearing before the Workmen's Compensation Board at Murray, resulted in preventing the compromise settlement as Mr. Overbey suggested with Mr. George Overbey, attorney for claimant, which compromise would have resulted in Commercial Standard's payment of $8500 had it been consummated, and our activity resulted in no agreement on that compromise from the Commercial Standard Insurance Company; * * * I helped him try this lawsuit and advised him on what he did in the trial of it and testified myself. * * *"

His further statement with respect to the attorney is as follows:

"* * * Welles Overbey, at no time, assumed full responsibility for any part of the defense or investigation or otherwise handling of this defense of this claim, he operated under instructions given by me and the Commercial Standard Insurance Company through correspondence."

\* \* \* \* \* \* \*

"Q62—To your knowledge, did Mr. Welles Overbey ever recommend to the Company that the claim be settled on the basis of $8500?

"A—On the basis of my understanding with him, he made such recommendation."

Mr. Overbey was introduced on behalf of the defendant and he testified in effect, that he never made any recommendation to settle the claim at $8500, and in a letter of January 8, 1958, copy of which is filed as Exhibit 95 to the testimony of plaintiff, Mr. Overbey began writing this letter after the hearing or trial, but before he had received notice of the award, which was received while writing it, and was only for 32 weeks pay at $26.00 per week, or $832.00, together with certain amount of medical fees, and with his recommendation, he said therein: "it is in keeping with the offer that we had made to settle this case ourselves".

Again the complainant in the instant case testified that he appeared at the trial; that he testified as a witness, and that he helped in the trial of the case before the Board. Mr. Overbey was questioned about that:

"12Q—After the matter was referred to you by the Company, did Mr. John Kennon assist you in the trial of this case before the Examiner?

"A—Mr. Kennon was present at the time of the trial. He sat back in the courtroom in the seat available for spectators and the hearing was held up at the attorneys' table at the Court bench; no, he didn't assist me; he did testify in the case, I have a transcript of the evidence which I have noticed in my

file; I introduced Mr. Kennon for the purpose of showing what payments had been made to the claimant, through Mr. Kennon and to show what medical bills had been paid, he paid them by draft himself.

"13Q—Other than this testimony to show the medical expenses paid by the Company, Mr. Kennon did not assist you in any other way?

"A—No."

Furthermore he stated that Mr. Kennon did not assist him in the research made with respect to the law of the case, saying:

"* * * as far as any assistance by Mr. Kennon in the trial or preparation of the case—no, I have never had an Adjuster to assist me in any case."

As against this indefinite testimony, part of which is denied by the counsel who tried this case and who was responsible for the legal conclusions, the defendant introduced four adjusters, who are referred to in this record as "experts in the field of adjusting claims of the character here involved". These adjusters are from the area in which this investigation was made and are familiar with the work to be done in such cases by adjuster, the duties and responsibilities that are involved, and the usual charges therefor. Each testified that he had examined the record, including the statements which Mr. Kennon had filed with respect to the labor done. One particularly, a Mr. Pat Richie, who had a broken-down statement which he had made up from the itemized account which was furnished and filed by complainant as a basis for the suit. Without breaking it down as Mr. Richie did,—though he did it in quite a minute way, he arrived at a total of $1,035.53. Now he included in his breakdown

everything that had been referred to in the capitulation of the total account as set forth in this account filed, such as hours spent, miles traveled, telephone bills, writing of letters, stenographic reports, stationery etc.

One Sandford T. Arrington, who also is an investigator and a claims agent with experience, after going over the entire record testified that $700.00 would be a maximum payment for the services rendered by complainant.

Mr. James R. Petty, another adjuster, after an examination of the entire record, and based upon his experience in such matters, testified in his opinion $500.01 would be a reasonable settlement for the services rendered by complainant.

One Mr. George Conrid Parker was also an expert and had experience in the field, testified that under normal situations, after his investigation of the record, in his opinion a reasonable charge would have been $350.00.

While they are experts and while their evidence must be considered as expert evidence is considered, it can not be disregarded, and we feel sure that the Chancellor did not disregard it, but counsel has said in his assignments of error that the Chancellor did not give this expert testimony the credit and consideration or weight to which it is entitled. We think counsel is correct in that statement.

Recapitulating what these experts have said, they fixed the value of the services as follows:

| | |
|---|---|
| Mr. Richie | $1,035.53 |
| Mr. Arrington | 700.00 |
| Mr. Petty | 500.00 |
| Mr. George Parker | 350.00 |

The record does not indicate that any services were paid for prior to the completion of the investigation, and apparently the itemized statement which has been filed as the basis for a settlement of this complainant's lawsuit, was the first that the defendant had ever known that any such amount was being requested.

From the figures that have been testified to by these experts, giving consideration to the very highest estimate for the value of the services rendered, which is by the testimony of Mr. Pat Richie of $1,035.53, there is a difference between that maximum figure and the account of complainant herein sought for service of $1,970.09. It is hardly conceivable that four investigators and claim agents who gave the above testimony could have been so far off base by virtue of their knowledge or experience, nor is it conceivable that they have deliberately falsified with respect to their opinion of services of persons engaged in a like profession or vocation, as to the dollar and cent value of same, after they examined the claim of complainant.

If we take an average of the value of the services rendered as fixed by the four disinterested experts, we have their four figures totalling $2,585.54. Divide that by four and you get $646.34. We do not mean to say that we are going to arrive at the value of the services of Mr. Kennon, the complainant, in this specific manner.

It was first the opinion of the writer that complainant was so far off base in this account, after studying the record and giving consideration to the fact that he could not explain what he had done in more than 150 hours of the labors which he claimed pay for, in a definite and minute way, that the decree of the Chancellor should be

reversed completely and a new trial granted the complainant. However, we do not feel that this is absolutely necessary and perhaps there can be a reasonable valuation fixed by us for the services of complainant, giving proper consideration to all the evidence so that an equitable amount may be fixed by our decree. The record shows that it has been expensive litigation in the instant matter, and we are of the opinion that the complainant is not all at fault because of the amount of litigation cost in this cause.

Again referring to the bill submitted by complainant to defendant, it appears that the first intimation defendant had of the amount of charges being made was by letter of February 12, 1958. Copy of the letter and the bill are filed as Exhibit 103 to the testimony of complainant. In that letter complainant enclosed the award which had been examined and approved on January 28, 1958. In the closing paragraph this statement was made:

"This file has led all of us over a long and rugged road but we have now reached the end. There is nothing further for us to do in connection with this matter. Therefore, we are closing our file and submitting our bill for services and expenses."

This "long and rugged road" statement indicates an effort on the part of complainant to get pay for unnecessary excessive service. The claim submitted at that time was not itemized as it should have been. An exact copy of the then rendered account shown by that exhibit is as follows:

"February 12, 1958

COMMERCIAL STANDARD INSURANCE COMPANY

Re: WC-165266

F. C. Faughn vs. Murray Auto Parts et al.

"BILLS FOR SERVICES AND EXPENSES:

| | |
|---|---|
| 637 Hours @ $4.00 | $2,548.00 |
| 2,691 Miles @ .08 | 215.28 |
| L. D. Telephone | 76.09 |
| Meals | 78.75 |
| Office Expense | 87.50 |
| | $3,005.62" |

On February 20, 1958, defendant wrote complainant saying:

"We have your letter of February 12, together with your bill in connection with this case.

"Due to the huge amount you charged us on this case, we will have to have a detailed statement from you, filling out the date, the work done and the number of hours, together with the number of mileage on each entry on your records.

"When you have furnished us with this, we shall be glad to consider your bill."

That letter is signed by E. B. Jordan, Claims Attorney for defendant. Upon receipt thereof complainant on February 25, wrote defendant as follows:

"We have your letter of February 20, 1958.

"We are complying with your request by enclosing copies of the daily work sheets in this file. We believe this will complete your record."

Upon receipt of that itemized statement the defendant, under date of January 5, 1959, wrote complainant:

"We have your letter of December 26th together with your bill.

"We had never given your bill any serious consideration because we felt that you surely couldn't be serious in submitting a bill of this size in connection with this claim. We certainly don't see how on earth you could ever hope to justify a bill of this size or this amount of work on this claim and we will not recognize the bill.

"We think that your services may be worth as much as $750.00 but that's about all."

The record indicates some correspondence between February 25, 1958 and the date that defendant refused payment of the bill as rendered on January 5, 1959, but the record does not show what that was. Therefore, this letter immediately above quoted is the first time the record indicates that defendant had suggested what it thought the service rendered by complainant was worth.

This record reflects no agreement with respect to amount of compensation to be rendered by complainant. The service rendered by complainant for defendant was a sort of specialized service. It requires a claim agent to inform himself with respect to many different elements that enter into the service to be performed and the ends to be accomplished. The value of the service to be performed differs from the ordinary types of agency. It requires expert knowledge of the agent performing such special duty for the principal. However, in the absence of any agreement with respect to claimant's com-

pensation, the rule is well stated in Am. Jur. (2d), Vol. 3, under the heading of "Agency", at page 407, Sec. 248, sub-heading, "Amount of Compensation; compensation for extra services". There it is said:

"* * * In the absence of any agreement the law implies a promise on the part of the principal to pay what the services are reasonably worth. In such cases it is sometimes said that the agent is entitled to the fair and just value of his services, determined in the light of the surrounding circumstances and in the light of what others receive for like services."

▮ We think there might be added the statement that such services, for compensation purposes, to be measured by the value of like services by competent persons in the community where performed.

By the same authority and under the same section in a following paragraph it is said:

"* * * In the absence of any agreement, the agent may, in a proper case, recover upon a quantum meruit for extra services which are not incident to the contract of employment or in contemplation of the parties to that contract at the time it was made."

Assuming, therefore, that we are correct in adopting the rule above quoted, the complainant is entitled to compensation for his services rendered in the involved matter which is recognized as reasonable compensation for such services rendered in the areas where furnished,—that is, Paris, Tennessee and Murray, Kentucky, and the surrounding area.

▮ We can not overlook the fact that the complainant has not supported the amount which he seeks to recover

for services by any person working in the same class or agency and service for the principal in the involved area, while on the other hand, in our analysis hereinbefore stated, defendant has come up with four persons to testify with respect to compensation for similar services in the involved area, who examined the involved account. Our attention has been called to Hepburn v. Milwaukee Mechanics Ins. Co., 27 Tenn. App. 612, 183 S. W. (2d) 772; Peoples Bank v. Baxter, 41 Tenn. App. 710, 298 S. W. (2d) 732; Beaty v. Hood, 43 Tenn. App. 228, 306 S. W. (2d) 671, by the brief of the complainant in which the Courts specifically hold in substance that the decree of the Court of Chancery must be sustained unless the proof preponderates against it. It is correctly stated in 43 Tenn. App. 228, 306 S. W. (2d) 671, as quoted by learned counsel for the complainant to the effect that:

"The Court of Appeals in chancery cases must reexamine the law and the facts, but unless the court finds that evidence preponderates against the chancellor's findings, his decree stands."

That certainly is the law and we fully recognize that to be the law, as shown by our T. C. A. Reference on page three hereof, however, there is no separate finding in this case from that stated in the decree of the Chancellor. None was sought by either party, and the Chancellor wrote no separate finding of facts. So all we have is the decree that says there was employment, which means that the defendant had referred its claim for handling to the complainant, and that the complainant rendered valuable service, which was a sort of specialized service on the part of the respective parties.

We are not unmindful of the statement in Franklin v. Green, 47 Tenn. App. 696, 342 S. W. (2d) 233, as quoted by counsel in his brief:

"Conclusions of Chancellor, before whom case was tried, without jury, were entitled to great weight on appeal."

That case doesn't control here because in that opinion this Section of the Court, speaking through Judge Bejach, specifically said:

'* * * The Chancellor saw the witnesses face to face, heard them testify, and his conclusions are entitled to great weight in this Court." Citing: "Mathis v. Campbell, 22 Tenn. App. 40, 117 S. W. (2d) 764, 767; Trice v. McGill, 158 Tenn. 394, 13 S. W. (2d) 49; Tindell v. Bowers, 31 Tenn. App. 474, 216 S. W. (2d) 752, 755."

In the instant cause the case was heard on depositions, and while that rule applies as stated, that we do give great weight to the Chancellor's opinion, certainly it does not apply with that strictness of a case heard before the Chancellor on oral testimony where he does see the witnesses face to face. The Chancellor in the instant case had the record, he read it. We have read it just as did he. He came to a different conclusion from what we do as to the weight of the testimony of the expert witnesses.

There is no better statement of any relationship existing between principal and agent than that which we find in Heard v. Niles, 32 Tenn. App. 410, 419, 222 S. W. (2d) 848, 851. It makes no difference whether that relationship is one of attorney and client, a principal and

claims agent such as here, or the ordinary relationship of principal and agent. That relationship simply means:

"The relationship [between principal and agent] is one of trust and confidence."

In a case of the character here examined it includes a trust of the principal who placed this inquiry in the hands of the complainant to perform the necessary services in order that the purpose of the creation of the agency might be accomplished, but it does not include the performance of unnecessary service, nor does it include compensation for unnecessary service, though conclusively rendered. The service must be reasonable with respect to the nature of its performance, the time required to perform it, the result accomplished, and of course it includes diligence in the performance of the service. He is required to use ordinary care as referred to the performance of the type service, the skill required for performance of such service, and diligence in connection therewith, but it does not require that excessive hours be put in, which are unnecessary, and which are not explainable, and in the ordinary case wherein such care and skill and diligence are required, if the agent fails to use it, he becomes liable himself to his principal. This is stated in Evans v. Boggs, 35 Tenn. App. 354, 245 S. W. (2d) 641, noted by counsel for defendant below, appellant here.

Defendant has not insisted that it has had any loss by virtue of the neligence in the performance of the services employed nor the nature and manner in which complainant performed the service. It is just a simple insistence that the charges made, the time put in and the effort on the part of the complainant as shown by this itemized statement and his own deposition, are excessive

and unwarranted. Thus the claim must be based upon the rule known as quantum meruit.

Should we take the total sum arrived at by the four experts plus the figure arrived at by the complainant, and add them we would have $5,591.16. Divide that by five estimates would average $1118.33. We are not willing to fix the services of complainant at such amount, but we do conclude that the value of the services when giving reasonable consideration to the estimates fixed by these experts and to their testimony in an effort to arrive at a figure which is fair and equitable for the services of complainant, taking into consideration that he is the one that performed the service and that some greater weight should be given his testimony than could be attributed to either one of the four experts standing alone, we feel his services should be fixed at $1500.00, together with interest thereon from the date of the decree below, and taxed with the cost of this cause in this Court.

In event proof in a case tried without a jury is found to be in equipoise as to facts, the presumption of the correctness of the findings of the Trial Court, as provided by T. C. A. sec. 27-303 prevails, but if the Appellate Court finds that the evidence preponderates against the judgment of the Trial Court, then it is the Appellate Court's duty to enter such judgment as it deems the preponderance of the evidence warrants. Perry v. Carter, 188 Tenn. 409, 219 S. W. (2d) 905, and other cases there cited.

It is, therefore, the judgment of the Court that the decree of the Chancellor will be modified to that extent and that judgment be rendered here for the complainant in the amount of $1500.00, with interest from April 10,

1963, and that he pay all of the cost in this Court. The costs in the lower Court adjudged against defendant as in the decree of the Chancellor. A decree will be entered in accord with this opinion.

Carney and Bejach, JJ., concur.