ALLEN AND BEAN, INC., Complainant-Appellant, v.
W. L. MILLER, Defendant-Appellee. —454 S.W.2d 367.

Middle Section. January 2, 1970.

Certiorari Denied by Supreme Court May 18, 1970.

374 

Frank P. Reynolds, Andrew D. Tanner, Nashville, for complainant-appellant.

J. Vaulx Crockett, Rutherford, Crockett & Guenther, Nashville, for defendant-appellee.

TODD, J. The Chancellor sustained pleas in abatement of defendant, W. L. Miller, and dismissed the suit of Complainant, Allen and Bean, Inc.; and complainant has appealed.

On February 3, 1965, at 9:35 A.M., complainant filed its original bill against defendant, alleging that he was a resident of Dalton, Georgia, but was presently in Davidson County, Tennessee. On the same date, subpoena to answer was served upon defendant in Davidson County.

On February 19, 1965, a plea in abatement was filed by defendant alleging that:

"1. The defendant W. L. Miller is a resident of Dalton, Whitfield County, Georgia, and not a resident of Tennessee.

2. At the time this suit was filed in this Court, said defendant was not present in person in Davidson County, Tennessee.

3. After the filing of the suit embraced in the bill in this cause, defendant was continuously outside of and not physically in person in Davidson County, Ten-

nessee, until a few minutes before process was served upon him.

4. The venue of this action is not in Davidson County Tennessee, under T.C.A. 20-401 and other applicable statutes.

5. This Honorable Court does not have jurisdiction over the person of defendant in this cause.''

On February 24, 1965, complainant filed a replication as follows:

''The complainant joins issue on the plea filed in this cause.''

On March 26, 1965, the defendant filed his own deposition.

On July 1, 1968, there was filed the response to interrogatories submitted to Joe Duck, a witness for the defendant.

On July 30, 1968, the deposition of Polly Pitts Sweany, witness for the defendant, was filed.

On August 5, 1968, the depositions of J. Carl Russell, witness for the defendant, the depositions of Wiley Edward Bean, George Whitus, and Frank P. Reynolds, witnesses for the complainant, and the affidavit of J. Vaulx Crockett, solicitor for defendant, were filed.

On April 16, 1969, the following decree was entered:

''This cause was heard upon the entire record, from all of which the Court finds that the defendant was, at the time of the filing of the original bill in this cause on February 3, 1969, at 9:35 A.M., and still is a nonresident of the State of Tennessee; that the proof does

not show conclusively that the defendant was within the limits of Davidson County at the time of the filing of the bill, however, it does show, without contradiction, that he left Davidson County and went to West Tennessee and upon his return during the afternoon of February 3, 1969, he was served with process in this cause.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the plea in abatement to the original bill is sustained and the service of process issued and levied thereunder is invalid and for nothing held, and this cause is dismissed at the cost of the complainant for which let execution issue if necessary.''

The uncontroverted facts are as follows:

For a number of years, complainant maintained in Nashville a mercantile establishment which included a carpet department. The defendant was a carpet salesman who resided in Dalton, Georgia, and came to Nashville frequently to call upon customers, including complainant. In June 1962, defendant and a Mr. Robert G. Rice, manager of complainant's carpet department, joined in forming a partnership which purchased complainant's carpet department and continued to operate same as a ''leased department'' within complainant's store. Mr. Rice continued as manager of the department for the partnership and defendant continued his work as a travelling carpet salesman.

Thereafter Mr. Rice died, and complainant filed this suit to collect from defendant the monies allegedly due complainant from the partnership. The original bill was filed herein at 9:35 A.M. on February 3, 1965, and sub-

poena was served upon defendant at about 5:00 P.M. on the same date.

On February 2, 1965, defendant arrived in Nashville and registered at the Noel Hotel, where he spent the night. The record is silent as to when, if ever, defendant "checked out" at the Noel Hotel. On the next morning, defendant went to The Salvage Center, which is near complainant's store in West Nashville, after which defendant drove in his auto to Lexington and Henderson, Tennessee, and, about 5:00 P.M. the same date, returned to The Salvage Center in Nashville, where he was served with subpoena. The record is silent as to where defendant went after being served with subpoena, that is, whether he spent the night in Nashville at the Noel Hotel or elsewhere, or whether he again left the county immediately after being served with process.

■ The principal and determinative issue of fact is whether or not the defendant was in Davidson County when this lawsuit was filed. His plea in abatement says he was elsewhere. The replication joins issue on this assertion. The burden of proof was upon the defendant to sustain the factual allegations of his plea in abatement. Moore v. Gore, 191 Tenn. 14, 17, 231 S.W.2d 361 (1950).

Defendant cites authority from other states for the proposition that the burden of proof is upon the complainant in cases of this nature. The rule in Tennessee, as stated in Moore v. Gore, supra is:

"* * * Of course the burden is upon the defendant to establish the state of facts alleged in the pleas in abatement." 191 Tenn., p. 17, 231 S.W.2d p. 362.

In Childress v. Perkins, 3 Tenn. 87 (1812) our Supreme Court said:

"Nothing is said in the act about the place of residence of the defendant, nor is it necessary that the suit in transitory actions should be brought in the county where the defendant resides; but it is necessary that the process should be served in the county where the suit is brought. The action is to follow the defendant; that is, it must be brought in the county where he is at the time it is brought; and a *return* of service *by an officer* of the county where the action is brought *would be evidence that he was there.* * * *" 3 Tenn. p. 87, 88. (Emphasis supplied)

Thus, the admitted fact that defendant was served with process in Davidson County at 5:00 P.M. on February 3, 1965, is evidence that he was in the county on that date. This evidence, coupled with his admission that he was in the county at 8:30 A.M. on the same date places a special burden upon the defendant to show that, contrary to the inference that he was in the county all day, he nevertheless was absent from the county at the precise instant during the day when the suit was filed, i.e., at 9:35 A.M.

The defendant offered the following evidence on this subject:

Defendant testified by deposition that on the date in question he arrived at The Salvage Center about 7:45 A.M.; that the owner, Mr. Pitts, and his mother, Mrs. Sweany, arrived between 8:03 and 8:05; that he talked to Mr. Pitts and Mrs. Sweany approximately 30 minutes and left The Salvage Center between 8:30 and 8:45 A.M.; that he then proceeded directly to Lexington, Tennessee, a distance of about 120 miles, where he called upon Burk and Sons between 10:55 and 11:00 A.M.; that he called on Duck's Market at Henderson, Tennessee, at 12:15;

and that "if the county line is 18 or 20 miles from the corporate limits of Nashville", he was not in Davidson County at 9:30 A.M. on February 3, 1965.

J. Carl Russell testified by deposition that the county line was 17.2 miles from The Salvage Center and that he had driven the distance in 25 minutes without exceeding the speed limit.

Polly Pitts Sweany testified by deposition that The Salvage Center regularly opens at 7:30 A.M., that she regularly arrives there at 8:00 to 8:15 A.M., but she did not have any recollection as to what time or date defendant was at The Salvage Center in February, 1965.

Joe Duck testified by interrogatory that he operated a store at Henderson, Tennessee, about 131 miles distant and three hours driving time from Nashville and about 28 miles distant and 45 minutes to one hour driving time from Lexington; that defendant ordinarily called on him in the afternoon; but that on February 3, 1965, defendant called on him at some time between 9:30 A.M. and noon.

In contradiction of defendant's foregoing evidence, the complainant offered the following:

Wiley Bean, an officer of complainant, testified by deposition that he had consulted counsel who had prepared this lawsuit for filing; that he anticipated the defendant's presence in Nashville to call upon The Salvage Center and other customers; that George Whitus, an employee of complainant, regularly passed The Salvage Center on his way to work and was instructed to watch for the presence of defendant's automobile; that on February 3, 1965, at about 9:25 A.M., Whitus reported to him (Bean) that defendant's automobile was at The

Salvage Center; that he (Bean) thereupon telephoned such information to his solicitor and then got in his own car and went to "see for myself"; that he saw defendant's car at The Salvage Center at 9:30, "give or take a minute or two each way"; that he was familiar with defendant's car, a Plymouth Station Wagon bearing a Georgia license plate, and that the car he saw at The Salvage Center was defendant's car.

George Whitus testified by deposition that he was employed at the store of complainant, which opened at 9:30 A.M.; that his wife was employed at Harvey's in downtown Nashville, which also opened at 9:30 A.M.; that he regularly took his wife to Harvey's each morning, leaving her there about 9:00 A.M. and proceeding to his own employment where he regularly arrived at about 9:25 A.M.; that he regularly passed The Salvage Center on the way from Harvey's to complainant's store; that he was requested to watch for a station wagon with a Georgia license plate at The Salvage Center; that, as he passed The Salvage Center on the way to work on February 3, 1965, he saw a station wagon with a Georgia license plate and so reported to Mr. Bean upon arrival at work at about 9:25 A.M.

Frank P. Reynolds testified by deposition that Mr. Bean telephoned him on the morning of February 3, 1965, and that immediately thereafter he filed the original bill herein.

 In matters heard upon oral testimony, where the Chancellor was privileged to hear and observe the witnesses in person, his judgment as to credibility of witnesses is ordinarily not disturbed. Where, as in the present case, all of the evidence is in writing, the Chan-

cellor's opinion will not be given as much weight, because this Court is as well able to evaluate the quality of the testimony as was the Chancellor. Kennon v. Commercial Standard Ins. Co., 52 Tenn.App. 521, 376 S.W.2d 703 (1963).

■ The Chancellor's finding should not be disturbed unless the evidence *preponderates otherwise.* T.C.A. sec. 27-303. If the conclusion reached by the Chancellor could only be reached upon a preponderation of evidence in favor of defendant, and if the evidence does not preponderate in favor of the defendant, then the evidence does *preponderate otherwise.*

■ The preponderance of the evidence, summarized above, is to the effect that the defendant *was* in Davidson County at 9:35 A.M. on February 3, 1965, when this suit was filed. The evidence does *not* preponderate in favor of the allegation of defendant's plea in abatement to the effect that

"2. At the time this suit was filed in this Court, said defendant was not present in person in Davidson County, Tennessee."

Since the defendant had the burden of sustaining his allegation by a preponderance of the evidence and has failed to do so, this ground of his plea in abatement must be rejected.

It is true, as stated in the Chancellor's decree, that:

"* * * the proof does not show conclusively that the defendant was within the limits of Davidson County at the time of the filing of the bill * * *"

however, it was not necessary for the plaintiff to show conclusively that defendant *was within* the jurisdiction

at the time suit was filed. On the contrary, the burden is upon the defendant to show, not conclusively, but by a simple preponderance of the evidence, that he *was outside* the jurisdiction at the time suit was filed. This, he has not done.

In grounds 2 and 3 of the plea in abatement, quoted supra, defendant makes the point that he was not only outside the jurisdiction when suit was filed, but continued outside the jurisdiction until a few minutes before process was served. The defendant's plea did not specifically rely upon the proposition that, after being within the jurisdiction earlier in the day (which was not admitted in the plea), his presence in the county was interrupted during the day by a temporary departure. On the contrary, the plea relies entirely upon no presence in the county whatever until shortly before service of process.

Nevertheless, the decree of the Chancellor is grounded in large part upon the ground (not specifically pleaded) that defendant left the jurisdiction for a few hours between the filing of suit and service of process. The legal conclusion of the Chancellor in this respect was doubtless based upon the case of Haynes v. Woods, 151 Tenn. 163, 268 S.W. 632 (1924). The facts of that case are stated in the opinion as follows:

> "The plaintiff commenced a transitory action (Shannon's Code, sec. 4818) before a justice of the peace of Williamson County on November 16, 1921, against the defendant, a nonresident, who was passing through or temporarily in the county. The defendant returned to Marshall County where he resided, and the warrant was not served until April 22, 1922, when he came

again into Williamson County, and was cited to trial upon the warrant issued November 16, 1921.'' 151 Tenn., p. 165, 268 S.W. p. 632.

In sustaining a plea in abatement, the Supreme Court said:

'' * * * the action must be commenced against the transient defendant while he is actually in the county, and process must be served upon him before his departure. Process cannot be sued out upon observing him pass through the county, or upon hearing of his presence in the county, and lodged with an officer to be served, if perchance such defendant should come again into the county after his departure without service.'' 151 Tenn., pp. 167, 168, 268 S.W. p. 633.

If the language of the Supreme Court, last quoted above, is to be taken literally, as applying to all cases, rather than cases involving the same facts as Haynes v. Woods, then the illogical and absurd result would be that any non-resident defendant, by the simple device of stepping across the county line for even a moment between issuance and service of process, would be enabled to extinguish an action lawfully begun, and thereby force the suitor to withdraw his suit at his expense and file another. Such a result is hardly reasonable or just in the present day of high mobility, rapid transit, and mass movement between counties. In many regions, especially metropolitan areas, a large segment of the population resides in one county and works and shops in another. Crossing county lines is becoming less and less significant in every-day life.

Haynes v. Woods is distinguishable on at least two grounds:

(a) In *Haynes,* the defendant left the county of suit *to return to his own county of residence,* whereas in the present case, the defendant did not return to his home but left the county of suit for only a few hours on business and returned on the same date to the county of suit.

(b) In *Haynes,* the defendant remained outside the county of suit from November 16 until April 22, a period of five months and six days. In the present case, the defendant was outside Davidson County a few hours—less than a day. While not binding, the following headnote of *Haynes* indicates this distinction:

"*7. Justices of the peace.—Jurisdiction in transitory action not acquired of nonresident defendant, where warrant preceded arrival in county.*

Justice's court acquired no jurisdiction in transitory action, under Shannon Code, sec 4518, over a nonresident defendant who was temporarily in county when warrant was issued, and who thereon *returned to county of his residence,* where such warrant was not served on him until he again came into county *some months later.*" 151 Tenn. p. 164, 268 S.W. p. 632 (emphasis supplied)

(c) In *Haynes* the defendant was "passing through or temporarily in the county." In the present case, the defendant had come to rest by taking up temporary residence in a hotel for one night at least, and, presumptively, for the following night.

For the foregoing reasons, this Court respectfully disagrees with the conclusion of the Chancellor that the suit is abated by a few hours absence from the jurisdiction

between the filing of suit and serving of process, all on the same date.

The foregoing makes unnecessary any extended discussion of or ruling upon other proceedings below and complainants in reference thereto, such as an amended and supplemental bill seeking service of process upon defendant through the Secretary of State as provided in Chapter 67, Public Acts of 1965 (sec. 20-235 et seq., T.C.A.) enacted on February 23, 1965, after this suit was filed; the plea in abatement thereto on constitutional grounds; and the refusal of defendant to answer certain questions on discovery relating to grounds for serving said process upon the Secretary of State.

The above decision of this Court sustains and validates the original personal service of process which is sufficient to support any amendment of the original bill within the purview of the cause of action stated therein. The constitutional questions in regard to service of process under the amended and supplemental bill may therefore be pretermitted.

The constitutionality of a law will be passed upon only when absolutely necessary for the determination of the case and of the rights of the parties to the litigation. Glasgow v. Fox, 214 Tenn. 656, 383 S.W.2d 9 (1964); West v. Carr, 212 Tenn. 367, 370 S.W.2d 469 (1962).

The defendant insists, however, that the filing of the amended and supplemental bill and the attempted substituted service of process was an abandonment of the original, personal service of process. Defendant cites a number of authorities wherein a second process was held invalid because of the existence of a previous, outstand-

ing process, but such is not the situation in the present case.

▇ Defendant further insists that the efficacy of the plea in abatement was conceded by complainant by delay in bringing the matter to issue, citing T.C.A., sec. 21-609 as follows:

"21-609. *Argument of demurrer or plea.*—A demurrer or a plea shall be set for argument at the first term." T.C.A. sec. 21-609.

and Gibson's Suits in Chancery, Fifth Edition sec. 270 as follows:

"A replication to a plea should be filed or the plea set down for argument as to its sufficiency, before the lapse of twenty days after the filing of the plea."

A study of the cases annotated under the foregoing statute and text will disclose that the reference is to the necessity of prompt action to test the *sufficiency* of the plea in abatement as a matter of law, that is, to test whether the grounds stated therein *if true* are sufficient to abate the suit. Delay in bringing the plea in abatement to hearing, at most would justify the trial court in sustaining its sufficiency, but would not estop the complainant from contesting the facts alleged in the plea in abatement.

This insistence of defendant would have some substance if ground 3 supra had been specifically based upon a *departure* from the county, rather than continuous absence prior to service of process. Since there was no specific reliance upon *departure* as a legal cause of abatement, and especially since this Court does not consider a

brief departure on a single day to be legally sufficient, this insistence of defendant cannot be sustained.

██ ██ Authorities cited are to the effect that failure to set a plea in abatement for argument *warrants* dismissal of the bill. No authority states that such failure *requires* dismissal of the bill. The trend and policy of our decisions are against tedious technicalities of pleading and procedure and favor forthright determination of the merit of the controversy. Generally, the defendant is not required to assert legal defences by demurrer, but may assert all matters of *law or fact* in his answer to the bill. Gibson's Suits in Chancery, Fifth Edition sec. 365. No stricter rule should apply in regard to responding to a plea in abatement, where the complainant promptly joins issue and files its proof as demonstrated by the schedule of proceeding shown at the beginning of this opinion.

The extensive citations and voluminous briefs demonstrate Herculean efforts on the part of counsel to sustain the respective positions of the parties herein upon the preliminary question of jurisdiction. The result reached by the Chancellor demonstrates that the non-resident defendant has no cause to fear prejudice in the jurisdiction.

The conclusions reached by this Court are not grossly prejudicial to the interests of defendant. The cause of action arose in Davidson County. Most, if not all of the transactions alleged in the original bill occurred in Davidson County. Most, if not all, of the witnesses will doubtless be found in Davidson County, where they can conveniently testify in person. If further evidence is to be by deposition, such depositions, or most of them will

doubtless be taken in Davidson County. In short, whether the case is tried in Davidson County, as determined by this Court, or in Dalton, Georgia, the place of defendant's residence, the major activity in preparation for trial must be in Davidson County, Tennessee.

The defendant is not in the unfortunate and unfair position of a non-resident who has been victimized by being caught and sued in a strange and distant jurisdiction by the unhappy circumstance of passing through the jurisdiction on a single occasion. This defendant is a regular visitor to Nashville. He has conducted his sales activities there for years. He joined as a partner in a business enterprise which operated in Nashville. He cannot complain very loudly that the enterprise he started and conducted in Nashville is also terminated in the same locality.

The decree of the Chancellor is respectfully reversed. The plea in abatement is overruled. The cause is remanded for further pleading and trial upon the merits. The costs of this appeal are taxed against the defendant-appellee. Other costs will abide the disposition of the cause upon its merits.

Reversed and Remanded.

Shriver, P. J. (M.S.), and Puryear, J., concur.