William K. GRISHAM, Jr., and wife, Anna Jean Grisham, Plaintiffs-Appellees,

v.

Sara Faye LOWERY, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

Jan. 23, 1981.

Certiorari Denied by Supreme Court Aug. 3, 1981.

Permission to Appeal Denied Aug. 31, 1981.

Thomas M. Bottoms, Harwell, Bottoms & Plant, Lawrenceburg, for plaintiffs-appellees.

William E. Boston, Boston, Bates & Holt, P. C., Lawrenceburg, for defendant-appellant.

## OPINION

LEWIS, Judge.

Plaintiffs, Doctor and Mrs. Grisham sued defendant Mrs. Lowery and sought specific performance of an option to purchase contained in a lease. Defendant declined to comply with the option-to-purchase portion of the lease because plaintiffs had failed to give written notice of their intention to renew as required by the lease. After a trial before the Chancellor, without the intervention of a jury, judgment was entered requiring that defendant "be ordered to deliver a good and merchantable title by general warranty deed to the Plaintiffs in return for the cash payment of Thirty Thousand ($30,000.00) Dollars . . . ."

Defendant filed her notice of appeal and is properly before this Court.

The facts material to a decision in this case are as follows: In late 1976, plaintiffs contracted to purchase from defendant a veterinary medicine clinic and the approximate one acre of land upon which the clinic was located. At the closing of the purchase of the clinic, plaintiffs and defendant also entered into an agreement for plaintiffs to lease with an option to purchase the remaining portion of defendant's original thirteen and one-half acres along with the house and barn located thereon.

The lease, in pertinent part, is as follows:

Lessees shall take possession of the property on or before the 1st day of January, 1977, and shall pay to Lessor the sum of Two Hundred Twenty-Five Dollars ($225.00) per month as rent on the aforesaid premises, payable the 1st day of each month, beginning the 1st day of January, 1977.

Unless Lessees shall elect to purchase under the terms of this contract they shall, on the 31st day of December, 1977, deliver said property into the possession of Lessor in as good condition as the same is now, ordinary wear and tear excepted.

It is further agreed that if the Lessees do not elect to purchase under the terms of this contract, all improvements or repairs on said premises made by them shall be considered as part of the real estate and be taken as rent in addition to the sum set forth above.

And it is further agreed that provided all rental theretofore due have been paid, Lessees may, during the last thirty (30) days of the term of this lease, elect to purchase said property for the sum of Thirty Thousand Dollars ($30,000.00), same to be paid in cash at closing, which said closing shall be at a date mutually agreeable to Lessor and Lessees. No sums theretofore paid as rental shall, in the case of such purchase, be applied as a credit upon said cash payment.

As and when Lessees shall elect so to purchase under this contract, Lessor, upon the payment by Lessees of said sum in cash, will execute and deliver unto Lessees a good and sufficient deed, free from encumbrances and with general warranty.

It is further understood and agreed that the Lessees shall have the additional right to extend the term of this lease for an additional period of one (1) year, beginning on the first day of January, 1978, provided the Lessees notify in writing the Lessor of their intention to extend same, said notice to be given at least thirty (30) days prior to the first day of January, 1978, and provided further that during such extended period of one (1) year, the rent to be paid by the Lessees to the Lessor shall remain Two Hundred Twenty-Five Dollars ($225.00) per month, and the Lessees shall have the same option to purchase said premises upon the same terms and conditions hereinabove set forth.

The original one-year term expired December 31, 1977. Plaintiffs admit they did not give written notice of their intention to extend the lease for the calendar year 1978. After the expiration of the original term, plaintiffs remained in possession of the premises and, on November 24, 1978, orally informed defendant that they wished to exercise their option to purchase. Defendant told plaintiffs that because they had neglected to give her written notice as required by the lease, her obligation to sell the property had ended on December 31, 1977.

At the time of the closing of the sale of the veterinary clinic and the execution of the lease, plaintiffs were furnished a copy of all papers, including a copy of the lease. Doctor Grisham testified that he filed all of his papers relating to the sale and the lease at the clinic. When asked if he read the lease, Dr. Grisham stated, "I am sure I didn't read it all, we had so many papers to sign, uh, I know I don't remember all of the terms of that contract." The proof is not clear, but the inference is that plaintiffs did not look at their lease or attempt to find it until they decided in 1978 to exercise the option. Dr. Grisham testified that when he did look for the lease he was unable to find it, although he was able to find all of the other papers having to do with the sale of the clinic.

Defendant worked in the veterinary clinic for Dr. Grisham until approximately May 1, 1977, some four months after the sale. Dr. Grisham testified that during the first week after he purchased the clinic he talked with defendant and told her, "I would not purchase that clinic without buying the house and the acreage surrounding that clinic," and "[s]everal times during the time that she was working for me, I told her that I was intending to buy that property, that I

would not buy it during the first year." Defendant's only reply to this was, "Well." Doctor Grisham further testified that in August, 1977, defendant came to the clinic to bring one of her animals and that he told her, "I was not going to buy it the first year, that I would buy it the second year," and that defendant replied, "Oh, well." Doctor Grisham saw defendant at a birthday party in November, 1977, but he did not discuss the lease or purchase of the property with defendant. He testified that he next saw defendant on January 9, 1978, but could not recall their exact conversation. However, on each of the few times that he saw defendant, "I tried to mention that I wasn't going to buy it the first year, that I would buy it the second year."

Defendant testified that approximately one week before Christmas, 1977, Dr. Grisham told her, "I am not going to take that this year," and that

I thought, I already know that you're not going to. The deadline was December 1st, and you did not renew it in writing, and my attorney, when I had this written up had told me that to make an option binding between two parties it had to be in writing, to sell a piece of property.

She was asked, on cross-examination, why she didn't tell Dr. Grisham what she thought, and she stated: "Well, Mr. Bottoms, the option date for renewing the option had passed, he had until the 31st of December, 1977 to change his mind about buying this property, I did not want to sell the property, so why would I point this out to him."

It was Dr. Grisham's testimony that the first time he was aware that defendant was not going to sell the property to him and his wife was on November 24, 1978, when he went to defendant's home and told her, "Sara, I have the money, I want to know how you want me to pay you. Do you want me to pay it all now, or do you want me to pay part now, part after the first of the year?" and defendant answered, "I am not going to sell it to you."

The Chancellor, in finding that plaintiffs were entitled to specific performance, stated:

[T]his Court is not relying solely upon the doctrine of waiver as requiring a conclusion that the option continued in effect into 1978, so that the Plaintiffs are entitled to specific performance thereof. This Court is also of the opinion that the Plaintiffs are entitled to the benefit of their option even if merely holdover tenants without the benefit of waiver of the written notice requirement. Even the Defendant agrees that the holding over created a tenancy for an additional year. . . . Once possession was retained into 1978 and the Defendant accepted rent without objection for January and subsequent months in 1978, a holdover tenancy for the entire year became binding upon both parties, even if the extension into the second year of the lease was not properly effectuated or the proper procedure waived. Attorneys for both sides seem to agree that Plaintiffs at least had the benefits of a holdover tenancy for 1978 and that the holdover tenancy necessarily includes the continued payment of rent in accordance with the written lease. The disagreement develops as to whether or not the option to purchase continues during a holdover tenancy as do the other terms of the lease such as rent and maintenance. This Court concludes that under the facts of this particular case the option continues during the second year, entitling the Plaintiffs to purchase the property at the price and in accordance with the method in which the Plaintiffs attempted to purchase the property in December, 1978.

Defendant has presented three issues for our consideration. We discuss issues one and three together.

### ISSUE ONE

Whether a holdover lessee is entitled to specific performance of an option to purchase in a lease when the lessee has failed to comply with the specified and unambiguous terms of the lease?

### ISSUE THREE

Whether an option to purchase is included in a holdover tenancy by the lessee?

We are of the opinion, and so hold, that plaintiffs' holding over, and defendant's accepting rent for the premises, created a holdover tenancy for an additional year but that plaintiffs' option to purchase did not survive into the holdover tenancy.

The Chancellor, in a most comprehensive Memorandum, states that he had been unable to find any Tennessee cases regarding whether an option to purchase contained in a lease continued during a holdover tenancy, counsel for the parties have cited none, and our research, likewise, fails to reveal any Tennessee case on point.

The Chancellor, in holding that in the case at bar the option to purchase was extended by plaintiff's holdover tenancy, relies principally, if not totally, on *Gressitt v. Anderson*, 187 Md. 586, 51 A.2d 159 (1947). In *Gressitt* the lease in question was for a period of one year and contained a purchase option but contained no provision for renewal of the lease. The lessee, nevertheless, held over and continued to pay rent on a monthly basis, which was accepted by the lessor. The Court rejected the lessor's contention that the tenancy was one from month to month, or at will, and not from year to year because the lease provided that no notice was requisite to end the tenancy under the lease. The Court further stated that in the absence of a clear statement to the contrary, the purchase option clause would be applicable to a holdover tenancy and could be exercised after the expiration of the original lease. The rule stated in *Gressitt* is a distinct minority rule, possibly limited to the State of Maryland. The majority rule is that a purchase option contained in a lease which is exercisable during the lease term cannot be exercised by a lessee holding over after the expiration of the lease. *See Smith v. Carter*, 213 Ark. 937, 214 S.W.2d 64 (1948); *Wanous v. Balaco*, 412 Ill. 545, 107 N.E.2d 791 (1952); *O'Brien v. Hurley*, 325 Mass. 249, 90 N.E.2d 335 (1950); *Wright v. Barclay*, 151 Neb. 94, 36 N.W.2d 645 (1949); *Atlantic Product Co. v. Dunn*, 142 N.C. 471, 55 S.E. 299 (1906); *Kruegel v. Berry*, 75 Tex. 230, 9 S.W. 863 (1888); *Napper v. Rice*, 127 W.Va. 157, 32 S.E.2d 41 (1944). *See also* 15 A.L.R.3d 470, 489 (1967).

We are of the opinion that the rule adopted by the majority of jurisdictions is the better rule and, since our research fails to disclose that the appellate courts of Tennessee have spoken to this issue, we adopt the rule that an option to purchase contained in a lease which is exercisable during the term of the lease is not extended by a holdover tenancy and, therefore, cannot be exercised by a lessee holding over after the expiration of a lease.

## ISSUE TWO

Whether the lessor in the case at bar waived the requirements as specifically set out in the lease agreement?

Unless defendant waived this requirement, plaintiffs were required to give notice in writing and at least thirty days prior to the first day of January, 1978. The notice plaintiffs gave defendant did not comply in either particular; it was neither in writing nor thirty days prior to January 1, 1978.

The Chancellor, after setting forth certain facts in his Memorandum, states: "In this case, the Court concludes that the statements of Dr. Grisham to Mrs. Lowery in the middle of December, 1977, constitute an oral notice to continue into the second year of the lease with an understanding that the option would continue in effect during the second year." The Chancellor's conclusion is based, at least in part, on the following erroneous finding of fact:

The Defendant testified that Dr. Grisham told her about a week before Christmas that he was not going to take the property that year, but that he intended to buy it during the second year. (On cross-examination, Mrs. Lowery first admitted that Dr. Grisham said he intended to buy during the second year, but later, after some vacillation, she testified that Dr. Grisham did not tell her he was going to buy during the second year, from all of which the court concludes that Dr. Grisham did in fact communicate his intent to purchase the property during the second year to Mrs. Lowery, even though her

memory about the same may not be clear.)

Doctor Grisham testified that he discussed the purchase of the clinic with defendant several times while she was employed by him; that he discussed his intent to purchase the property the second year with defendant in August, 1977; and that he next discussed the purchase of the property in January, 1978. At no time did Dr. Grisham testify that he had a conversation with defendant in December, 1977. Our review of the record reveals that defendant did not testify that Dr. Grisham told her that he intended to buy the property during the second year. Defendant testified on direct examination, "Doctor Grisham told me, 'I am not going to take that this year.'" On cross-examination, she was asked concerning the conversation of December, 1977, whether or not Dr. Grisham had stated that he intended to buy the property in the second year, and she answered, "He certainly didn't." She was asked if he told her in the August, 1977, conversation whether he intended to buy the property in the second year, and she answered, "He did not." Her testimony is unequivocal. On both direct and cross-examination she testified that Dr. Grisham did not tell her he intended to buy the property in the second year.

 The decision of the Chancellor as to the credibility of witnesses is final and not subject to review in the appellate courts. *Early v. Street*, 192 Tenn. 463, 469, 241 S.W.2d 531, 534 (1951). However, there is no testimony in this record, except defendant's, as to a conversation between Dr. Grisham and defendant in December of 1977. Therefore, the conclusion that defendant testified that Dr. Grisham stated that he intended to buy the property during the second year is based upon an erroneous finding of fact and is not binding on this Court.

The Chancellor further found:

The Plaintiff, Dr. Grisham, testified that he did not know he was supposed to give notice in writing, and felt that his various oral statements to the Defendant concerning his intent to buy the property during the second year was sufficient to put her on notice that he intended to remain there into the second year and to purchase the property under the option some time during the second year. The Court concludes that the Plaintiffs' ignorance of the terms of the lease concerning the requirement for written notice and their negligence in making themselves familiar with the terms of the written instrument are no excuse for their failure to give such written notice. However, the Court finds that the relationship existing between the Plaintiffs and the Defendant justified some laxity on the part of the Plaintiffs with regard to the formality of a written notice as opposed to oral statements and actions communicating the same intent. The relationship referred to includes the employment of the Defendant in the clinic for much of the first year of the lease and the Defendant continuing to bring animals to the clinic for treatment even after the Defendant terminated her employment.

Defendant's employment with Dr. Grisham was terminated approximately May 1, 1977. She was, therefore, employed for some four months. The record supports a finding that, prior to the termination of the original lease period, defendant was at Dr. Grisham's clinic in August, 1977, and December, 1977, only two times after her employment was terminated.

In *Gray v. Lipscomb*, 48 Wash.2d 624, 296 P.2d 308 (1956), the lessee had a one-day option to purchase certain property. The lessee expressed orally his intention to exercise his option but failed to exercise it on the required day as set forth in the lease agreement. In holding for the lessor, the Washington Supreme Court stated:

The [lessors] are not culpable because they hoped the [lessees] would not exercise the option. [Lessees] seem to feel that they stood in a confidential relationship to [lessors], which entitled them to look to the [lessors] for help in the matter. The [lessees'] theory that [lessors'] good manners, sociability, and friendliness created a confidential relationship, is not sound. [Citation omitted.]

The parties had always dealt at arm's length. The [lessors] owed no duty to [lessees] beyond the contractual obligations of the lease and option. They did not make any representations of fact in regard to the terms of the option, nor promise to enlarge its duration. All that can be said against [lessors] is that they did not help [lessees] to exercise their option. The [lessees] were in no way induced to forego actions upon the option by the statements of the [lessors]. [Lessee] Gray admitted that he had forgotten the terms of the option, . . . .

The court will not rewrite the option by enlarging its duration in order to save [lessees] from the results of their own negligence.

*Id.* at 627, 296 P.2d at 310.

In the case at bar plaintiffs were furnished a copy of the lease containing the option to purchase. Doctor Grisham's formal education is in excess of that attained by the average person. We are certain that had he read the lease, he would have understood it. However, the record discloses that he did not, at the time he signed the lease, read all of it and the inference from the record is that he never made any attempt thereafter to read the lease. While it is unclear, the inference is that plaintiff did not even look for his lease until November, 1978, almost eleven months after the original term had expired and almost twenty-three months after the lease had been entered into.

Plaintiffs and defendant entered into a lease with an option to purchase which is clear and unambiguous. If plaintiffs wished to extend their lease it was their duty to give defendant notice in writing at least thirty days prior to the first day of January, 1978. If either of plaintiffs had read the lease, this would have been clear to them.

■ It cannot be said that defendant was under any obligation to tell plaintiffs during the four months she worked for them or in August, 1977, that if they desired to exercise their option to purchase in the second year it was necessary for them to give her notice in writing. At that time she could not have known that they had not read their copy of the lease and could not have known that they were not intending to abide by the lease. Defendant's employment by Dr. Grisham for four months and bringing animals to the clinic on two occasions in 1977 did not create such a relationship as would allow plaintiffs to ignore the term of the agreement into which they had entered.

■ When a case comes to this Court from a trial before the Chancellor, without the intervention of a jury, there is a presumption of correctness of the judgment below and that judgment will be affirmed unless there is an error of law or unless the evidence is found by this Court to preponderate against the judgment below. *Smith v. Jarnagin*, 58 Tenn.App. 668, 674, 436 S.W.2d 310, 313 (1968). However, where the appellate court finds that the evidence preponderates against the judgment of the trial court, then it is the duty of the appellate court to enter such judgment as it deems the preponderance of the evidence warrants. *Kennon v. Commercial Standard Insurance Co.*, 52 Tenn.App. 521, 542, 376 S.W.2d 703, 712 (1963).

■ We are of the opinion, after a complete review of this record, that defendant owed no duty to plaintiffs beyond the contractual obligations of the lease and option. At no time did defendant make any misrepresentation of fact to plaintiffs in regard to the terms of the option, nor can any promise to enlarge its duration be inferred. While defendant did not help plaintiffs to exercise their option, we find no duty on her to do so. The record in this case discloses that plaintiffs did nothing to familiarize themselves with the terms of the option. They admit they did not read the lease, even though they had a copy of it. This Court will not rewrite the option by enlarging its duration in order to save plaintiffs from the results of their own negligence. *Gray v. Lipscomb, supra.*

The judgment of the Chancellor is reversed and the cause dismissed with costs to plaintiffs.

TODD, P. J. (M.S.), and CANTRELL, J., concur.