**HOHENBERG BROTHERS COMPANY, Appellee,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Appellant.**

Court of Appeals of Tennessee, Western Section.

Jan. 24, 1979.

Certiorari Denied by Supreme Court Aug. 27, 1979.

·Robert M. Johnson, Susan M. Callison, Memphis, for appellant.

Allan B. Thorp, Memphis, for appellee.

NEARN, Judge.

Delivery or non-delivery, that is the question.

A boxcar load of cotton bales belonging to plaintiff, Hohenberg Brothers Company, having an admitted value of $17,872.02 burned at Galveston, Texas. Plaintiff was of the opinion that at the time of the loss the goods were in the custody of the defendant carrier, Missouri Pacific, and that. pursuant to 49 U.S.C. § 20(11) the defendant owed plaintiff for the value of the goods. Defendant was of the opinion that it had not the custody of the goods at the time of the loss and, therefore, was not liable.

To settle the dispute, plaintiff filed suit and the matter was tried on depositions in the Circuit Court of Shelby County. The Trial Judge found that a uniform straight bill of lading had been signed by the railroad and although a certain business practice existed between plaintiff, through its agent, and the defendant railroad, such practice was one merely of convenience and did not affect the legal possession or the delivery of the goods to the carrier. There-

fore, the Trial Judge concluded that the defendant was in constructive, if not actual, possession of the goods at the time of the loss and liable to plaintiff for their value.

Defendant has appealed and insists that a signed bill of lading is only *prima facie* proof of delivery and acceptance by the railroad and that business custom or practice may contradict the bill of lading to show the true state of affairs; and further that in this case, such practice shows that in fact the goods were not in actual or constructive possession at the time of the loss.

This matter arrives in this Court for a *review de novo* accompanied by a presumption of the correctness of the finding and judgment below. T.C.A. 27–303.

We have underlined the word review in the previous paragraph as we believe counsel for the plaintiff-appellee misconstrues both the nature and scope of review of this Court.

We believe there is misunderstanding regarding the nature of this Court because, in counsel's brief, it is noted that "At the time of the taking of all depositions, objections except as to the form of the question were reserved for the trial". Then objections are made in the appellate brief to certain portions of the testimony found in the depositions and we are requested to rule on those objections.

■ This Court is a court of review, not a Trial Court. We do not *try* a case *de novo* as does a Circuit Judge on an appeal from the General Sessions Court. In a *de novo trial* the Circuit Judge does not review the action of the General Sessions Judge and is not concerned with what took place in the General Sessions Court nor the propriety of the lower Court's action; and no presumption of correctness attaches to the General Sessions judgment. The matter is *tried* as if no other trial had occurred.

■ The nature of a Court of review is entirely different. It is the function of a Court of review to *review* the actions of the Trial Judge. If it were not so, there would be no need to preserve a record on appeal, for the parties would just have at it all over again in this Court. Additionally, in this Court it is the appealing party who must carry the burden, no matter whether plaintiff or defendant below. In this case, the record does not reveal that any of the objections to testimony now made in this Court were ever made in the lower Court or ruled on by the Trial Judge. Therefore, we are unable to consider such objections on review.

■ As to the scope of review, counsel correctly cites to us T.C.A. 27–303 and the case of *Bankers Life & Casualty v. Jenkins* (1977 Tenn.) 547 S.W.2d 237 for the proposition that our *review* of non-jury cases is *de novo,* and that there accompanies the judgment below a presumption of correctness unless the evidence *preponderates* to the contrary. Since the case before us for review is non-jury, that legal proposition is appropriate.

■ However, in support of the judgment below counsel cites us to *Mazanec v. Aetna Ins. Co.* (1973 Tenn.) 491 S.W.2d 616 and *Stone v. Stonecipher* (1928 M.S.) 7 Tenn.App. 614, for the proposition that "If there is any material evidence to support the finding of the Trial Judge, the Reviewing Court should not disturb the finding." Of course, reviews under "preponderance of the evidence" and "material evidence" tests are not similar and, in fact, are poles apart. Under the preponderance of evidence test, the evidence is weighed by the reviewing Court on an evidentiary fact scale. Whichever side of the fact scale is heavier will be the finding of the Court. Where the review is on the test of "material evidence" no scale of evidence is used by the reviewing court. It is simply a search of the record to ascertain if material evidence is present to support the verdict. It matters not a whit where the weight or preponderance of the evidence lies under a material evidence review. The reviewing Court might well be of the opinion that the evidence preponderates heavily against the judgment below, but under a material evidence review, if material evidence is found to support the judgment, that is, evidence from which a

trier of facts, if he were inclined to believe it, could reach the conclusion reached, then, the judgment based thereon must be affirmed. That is why a "material evidence" test is one of law; not of fact. To search for the presence of evidence is a task of law. To weigh evidence is a task of fact.

The case of *Mazanec v. Aetna Ins. Co.,* supra, was a non-jury case reviewed under the material evidence rule. However, the case has no relevance to a review of this non-jury case. *Mazanec* was a workman's compensation case review in the Supreme Court where the rule is that workman's compensation judgments are reviewed as judgments in jury cases. The judgment presently before this Court of Appeals is neither a workman's compensation judgment nor a jury judgment.

The case of *Stone v. Stonecipher,* supra, involved the reviewing of a non-jury judgment in an ordinary tort case and the Court did state that such review was not *de novo* but was under the "material evidence" rule; which statement seems to be in opposition to all that we have so far said on this subject. The case not only seems to be, but is in opposition to what we have said; but for good reason. The case is a 1928 case. T.C.A. 27–303, which requires a *de novo* review, that is, a preponderance of evidence review of non-jury cases was enacted in 1929. Therefore, *Stone v. Stonecipher* has not been the law since 1929.

We have taken the time in this Opinion to bring all this out because there seems to be some confusion or misunderstanding among members of the bar as to the nature of this Court and its scope of review in cases such as this. We hope a better understanding will lessen our load.

We will now consider the defendant's single Assignment of Error which is to the effect that the evidence preponderates against a finding of delivery to the railroad.

The Hohenberg cotton in question was stored at the Southwestern Warehouse in Galveston, Texas. At the time of the loss Hohenberg owned Southwestern. Hohenberg ordered the cotton into a boxcar located on the tracks of Southwestern at its warehouse and sealed same. Before the car could be physically picked up by the defendant (actually its agent) the cotton burned.

Galveston is the largest shipping and receiving point for cotton in the nation. From the record it would appear that numerous warehouses are located on the island of Galveston. Consequently, there is a large daily movement of goods on and off the island. Because of the island nature of Galveston and the large rail traffic, it is necessary that agencies assemble all rail traffic from the various warehouses for movement off the island. The Galveston Houston & Henderson Railway Company handles the assembly of boxcars on the island. Stone Forwarding Company handled the paper work, that is, the preparation of bills of lading etc., for the assembly of the cars. The Galveston Houston & Henderson Railway Company is either owned by or is the agent of the defendant Missouri Pacific.

The procedure on the island is for the Galveston Houston & Henderson to deliver in the morning a battery of empty boxcars to a cotton warehouse for loading. The cars are placed on the warehouse tracks next to the loading dock. Removable personnel bridges cross the tracks from loading dock to loading dock and no cars may be delivered to or removed from the warehouse track unless these bridges are raised. The string or battery of cars are loaded by means of loading first the car nearest the warehouse dock or end of the warehouse tracks. Upon the loading of a car it is sealed by the warehouse for the railroad and the Stone Forwarding Company is notified of that fact. Bills of lading etc. are prepared on this information. The loaded car is not immediately removed because the railroad wishes to wait until the end of the day to pick up all loaded cars from the various warehouses at one time in order to assemble a freight train. In addition, the warehouse is not desirous that a loaded car be immediately removed from its tracks, for if it were, it would necessitate the complete stoppage of the loading of other cars as the entire battery of cars would have to be

moved out and switched in order that the last car, which is the first loaded car, could be removed and then the remaining unloaded cars again switched onto the tracks of the warehouse. It is easy to perceive the loss of time and resulting extra cost, inefficiency, chaos, and confusion to both the railroad and warehouse if each loaded car was immediately removed. Therefore, as each car is loaded the fact thereof is made known to Stone Forwarding Company, and the paper work commences for the inclusion of that car in the departing train for that day and the bill of lading is delivered by Stone to the railroad and signed by the railroad acknowledging receipt of the car in good order. However, as before stated, a car is not removed from the warehouse track just because it is loaded and a bill of lading is prepared. The car is not in the actual possession of the railroad at the time the bill of lading is signed by the railroad. No car is removed from the tracks of the warehouse until the warehouse "orders out" the car. This is done by the warehouse making a call near the close of each day to the railroad yard office and identifying the cars by numbers that are to be "ordered out" for removal from the warehouse track. When this is done, car numbers and locations are checked with bills of lading and the yard master makes up his train and ascertains the order by which they are to be picked up. This enables the railroad to begin at one end of the island and in an orderly manner assemble its train without hopscotching all over the island. If the warehouse does not orally "order out" a car the railroad does not pick it up even if it has a bill of lading. Correspondingly, if a car is "ordered out" by the warehouse, even if the railroad has no bill of lading, the car will be picked up by the railroad and placed in the railroad yard until a bill of lading arrives. This sometimes happens when the warehouse works late and loads a car after Stone Forwarding has closed for the day.

The car in question burned after it was loaded and sealed and after the bill of lading was prepared and signed by the railroad but before the warehouse "ordered out" the car and, in fact, before the warehouse had loaded the entire battery of cars.

The Trial Judge found that (1) a "calling out" was not necessary to place the railroad in constructive possession of the car; (2) and, even if it were, "it is uncertain from the record whether the subject car might *not* have been 'called out'" (emphasis ours) and, therefore, (3) the evidence did not overcome the presumption of delivery and possession raised by the bill of lading.

As we view the depositions filed in this cause, the proof is that in the ordinary course of events no car was ever removed from the warehouse tracks unless it was "called out" by the warehouse. One of Southwestern's witnesses testified that for the 31 years that he had been working cotton, no car was removed from the warehouse track unless it had been "called out". However, he did testify, as pointed out by the Trial Judge, that if the railroad had wanted just one car it could have come and gotten it. What the railroad could possibly have done and what was done for 31 years are two different things. Even so, the railroad could not come and get a car whenever it wanted one. It would still have to seek the permission of the warehouse and have the warehouse remove the personnel bridges which blocked the track.

It seems to us that all parties considered the car turned over to the railroad when the car was called or ordered out and not before.

Responsibility and liability of a carrier pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11) does not attach until there is a delivery. *Cain-Sloan Co. v. Louisville & N. R. Co.* (1968) 221 Tenn. 70, 424 S.W.2d 787.

There is no complete delivery when something remains for the shipper to do as a condition precedent to the commencement of transportation. While a bill of lading operates both as a receipt and a contract, the receipt clause is not conclusive and may be explained by parol or other evidence. *Agar Packing & Provision Co. v. Weldon* (1956 W.S.) 42 Tenn.App. 175, 300 S.W.2d 51.

■ We hold that in this case a calling or ordering out was necessary for possession of the car to pass to the railroad.

■ As to the issue of whether it was called out, the defendant's proof is that the car was never called out the day it burned. The best proof to the contrary is a statement from the warehouse foreman who, when asked whether or not he had, in fact, called out the car, said "No, I can't, I can't definitely say that I had." This does not, in our view, contradict the proof of the railroad that there never had been a "calling out".

When a case is heard entirely upon depositions, the presumption of correctness of the factual findings of the Trial Judge mandated by T.C.A. 27–303 does not apply with the same strictness as it does in cases heard orally where the Trial Judge has the opportunity to view and appraise the witnesses. *Kennon v. Commercial Standard Ins. Co.* (1963 W.S.) 52 Tenn.App. 521, 376 S.W.2d 703.

We are of the opinion that the proof overcomes the presumption of delivery raised by the bill of lading and that the evidence as a whole preponderates against the judgment below. Therefore, the judgment of the Trial Judge is reversed and judgment will be entered in this Court for the defendant, Missouri Pacific Railroad Company. Costs below and of appeal are adjudged against appellee.

Done at Jackson in the two hundred and third year of our Independence and in the one hundred and eighty-third year of our Statehood.

MATHERNE and SUMMERS, JJ., concur.