IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
SEPTEMBER 17, 2009 Session

# RACHEL SUMNER, ET AL. V. METROPOLITAN NASHVILLE BOARD OF HEALTH, ET AL.

### Direct Appeal from the Chancery Court for Davidson County
### No. 05-2807-IV    Richard H. Dinkins, Chancellor

### No. M2008-01597-COA-R3-CV - Filed October 27, 2009

Appellants, citizens of Davidson County, sought review of the County's mosquito control policies, which were in effect in 2005. Upon review, the Appellee, Metropolitan Board of Health of Nashville and Davidson County, denied Appellants' claim for lack of standing. The trial court granted Appellants' common law writ of certiorari and affirmed the Board's findings. Upon review, we conclude that the Appellants' have no standing, and that the issues presented are rendered moot based upon the County's adoption of a new mosquito control policy in 2008. Affirmed.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Joseph Howell Johnston, Nashville, Tennessee, for the Appellants, Rachel Sumner, Michele Flynn, Eleanor Snyder, Bruce Wallenstein and Bruce Wood.

Sue B. Cain, J. Brooks Fox, Elizabeth A. Sanders, Nashville, Tennessee, for the Appellees, Metropolitan Government of Nashville, Davidson County.

### OPINION

On July 23, 2005, Rachel Sumner, Michele Flynn, Eleanor Snyder, Bruce Wallenstein, and Bruce Wood (together the "Appellants") submitted a letter to Dr. Stephanie Bailey, then-Chief Medical Director of the Metropolitan Nashville Health Department. The purpose of this letter was to request a decision regarding the current policies for mosquito control. Specifically, the Appellants' letter states:

We are concerned that the health risks of spraying pesticides have not been weighed and that the current program could have a stronger emphasis on preventative methods like many cities that we have mentioned to you in the past.

\*                                        \*                                        \*

All petitioners request a decision regarding the current policies for mosquito control. In addition, we ask for the creation of written policies specifically outlining the requested changes to policies in order to protect us from the pesticide being sprayed by the Health Department before any spraying takes place in Davidson County in 2005.

By letter of August 4, 2005, Dr. Bailey informed the Appellants that the issue presented would need to be addressed by the Metropolitan Nashville Board of Health (the "Board") because the Board approved the Integrated Management Plan, which is based upon the Center for Disease Control's ("CDC") guidelines. To that end, Dr. Bailey forwarded the letter to the Board. On August 22, 2005, the Appellants sent a letter to the chairman of the Board, appealing Dr. Bailey's decision to refer the matter to the Board rather than making a decision herself. The Board addressed Appellants' issue at its September 13, 2005 meeting. An attorney for the Board explained that the Board must first determine the issue of standing. The requirements for standing were defined in the appeals policy under the definition of an "affected person." The attorney explained that, if the Appellants met the definition of an "affected person," then the Board would be required to hear the appeal. Appellant Sumners then spoke on behalf of the Appellants, stating:

[T]he petition is to appeal the Director's decision to spray for mosquitoes without looking at the merits of our letter, which show that, among other things, that victims who called the Health Department with symptoms from the pesticide directly related–some of these people were outside in their front yard with–they were lawn care workers–they were sprayed by pesticide, and they've had symptoms. They called. They were told that the pesticide was safe; they could not cause the problems.

Following Ms. Sumner's comments, the attorney for the Board explained that:

The petitioners have to show that they have standing. And in order to establish that they are an affected person [sic] under the Code and as such term is defined in the regulations, they have to show that they suffered a distinct injury by Dr. Bailey's decision to refer their letter to the Board. The Petitioners cannot show that they suffered any injury that is different from other citizens of Davidson County that are

requesting consideration of the Board's policy on spraying. The petitioners July 23rd letter does not request action by Dr. Bailey on this specific spraying incident. The letter is just requesting the policy change. Therefore, they have not met the definition of an "affected person" pursuant to the regulations.

On September 13, 2005, the Board unanimously denied the Appellants' appeal for lack of standing. On November 14, 2005, the Appellants filed a petition for common-law writ of certiorari in the Chancery Court of Davidson County against the Board and the Metropolitan Nashville and Davidson County Government (together "Appellees"). By Order of February 3, 2006, the trial court ordered the writ to issue, and ordered Appellees to prepare and submit a record of the proceedings giving rise to the Board's decision.

While this appeal was pending in the Chancery Court, on April 8, 2008, the Board formally adopted a new mosquito-control policy. The new policy states, in relevant part that:

> The revised policy of MPHD shall be to spray for adult mosquitoes ONLY when a documented threat to public health exists. Adulticide application will be considered at the level of CDC risk category 3 (moderate probability of human outbreak). In prior years, the threshold for spraying was in the CDC risk category 2 (low probability of human outbreak). Based on prior documented risk, the department expects conditions described as thresholds for spraying to be rarely if ever met, and for spraying to be a rare event.

The minutes of the April 8, 2008 Board meeting are included in the record, and indicate that "a documented threat to public health" refers to mosquito-borne diseases such as West Nile Virus. Conversely, "a documented threat to public health" does not refer simply to "nuisance mosquitoes."

On June 23, 2008, the Chancery Court affirmed the Board's action in dismissing the Appellants' appeal, specifically holding that "the Board's determination that Petitioners were not affected persons within the meaning of the policy and code provisions was correct and not arbitrary. They suffered no distinct and palpable injury as a result of Dr. Bailey's referral of the letter to the Board." Appellants appeal and raise five issues for review as stated in their brief:

> 1. Whether the trial court erred in denying Petitioners' Oral Motion for Default on grounds that Respondents failed to Answer the Amended Petitions for Writ of Certiorari as required by T.C.A. §27-9-110.
>
> 2. Whether the trial court erred in not considering Petitioners' claim that Respondents' procedure for adopting a policy defining standing violated due process.

3. Whether judicial review of [the] Board of Health's improper application of new policy definition of standing was barred by the 60-day statute of limitations.

4. Whether the trial court erred in dismissing the Amended Petitions for Writ of Certiorari on grounds that Petitioners had not demonstrated they had standing to complain of the acts and omissions of the Board of Health and its Chief Medical Director.

5. Whether the legal issues relating to standing and due process fall within recognized exceptions to the Mootness Doctrine for purposes of appellate review despite the lapse of time.

We perceive that the dispositive issues in this case are: (1) Whether the Appellants had standing and (2) Whether the appeal is moot. Before addressing these issues, we first note that review of the decision of the Board is by common law writ of certiorari pursuant to the provisions of Tenn. Code Ann. §27-9-101, *et seq*. The scope of judicial review under the common law writ of certiorari is narrow and is limited to whether the inferior board or tribunal has exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. *Willis v. Tenn. Dep't of Correction*, 113 S.W.3d 706, 712 (Tenn. 2003).

The scope of judicial review under the common law writ of certiorari also includes a determination of whether the decision maker acted without material evidence to support its decision. *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (Tenn. Ct. App. 2001). Consequently, while judicial review under the common law writ does not involve review of the intrinsic correctness of the lower tribunal's decision, *Willis*, 113 S.W.3d at 712, and a reviewing court may not re-weigh the evidence presented to the board, *Gallatin Housing Auth. v. City of Gallatin*, 868 S.W.2d 278, 280 (Tenn. Ct. App. 1993), a court is required to review the record of the board's proceedings to determine whether there is material evidence to support the board's conclusion. *Id.*

**Standing**

Metropolitan Code of Laws §2.36.140 requires the Board of Health to "hear and act upon complaints of persons affected by decisions of the chief medical director." To this end, the Board adopted an appeals policy that includes a preliminary determination of whether one seeking to appeal to the Board meets the definition of "affected person." Under the Board's policy, "affected person" is defined as follows:

A person appealing a decision of the Chief Medical Director must demonstrate that he or she h[as] suffered a distinct and palpable injury; that the injury was caused by the challenged conduct and that the injury is apt to be redressed by the remedy that the Board of Health may grant.

-4-

As correctly noted by the trial court, this definition is consistent with the standing requirement for those seeking certiorari review as set forth in *City of Brentwood v. Metro. Board of Zoning Appeals*, 149 S.W.3d 49 (Tenn. Ct. App. 2004). As discussed in *City of Brentwood*, the focus of the standing inquiry is on the party, not on the merits of the claim.

In the instant case, the matter appealed to the Board (as articulated in the appeal letter to the Board) was Dr. Bailey's decision to refer the items reflected in the Appellants' July 23, 2005 letter to the Board, rather than to "make a decision on the merits of our letter." Nonetheless, at the hearing, the Appellants' stated their intent as follows:

> [T]he intention is not to determine whether Dr. Bailey has the right to–to send this to the Board to make a decision. This petition is to appeal the Director's decision to spray for mosquitoes without looking at the merits of our letter, which shows that, among other things, that victims who called the Health Department with symptoms from the pesticide directly related–some of these people were outside in their front yards with–they were lawn care workers–they were sprayed by pesticide and they've had symptoms. They called. They were told that the pesticide was safe; they could not cause the problems. They were not told that those–those symptoms were right on the MSDS and the first aid treatment for those symptoms.
>
> This is not a one-time occurrence. This has happened for the last two years. With every person I've talked to who calls me, saying, I called the Health Department, I have problems; they said it was safe; I was sick. We have affidavits from these people, and we also have–three of them are going to be filing a lawsuit for their personal injuries that were sprayed last year.
>
> There are many things that are very simple that we have asked this Health Department to do to protect people from the pesticide and to inform people about the pesticide, and it has not been done, and that's what this appeal is about.

Although the Appellants contend that their appeal to the Board was based upon "the decision to spray pesticides," we disagree. Dr. Bailey made no decision relative to the merits of the matters raised by Appellants. Rather, the issue appealed was concerning only Dr. Bailey's decision to forward the matter to the Board. While the Board acknowledged the confusion as to the exact scope and nature of Appellants' appeal, consistent with its policy on standing, the Board's first inquiry was whether the Appellant's were affected persons relative to Dr. Bailey's decision to refer the letter to the Board. This inquiry required Appellants to show that: (1) they sustained a distinct and palpable injury; (2) that the injury was caused by the challenged conduct; and (3) that the inquiry was one that could be redressed by the Board.

-5-

As noted above, the scope of this Court's review of the decision of the Board is limited. We will not scrutinize the intrinsic correctness of the lower tribunal's decision and it is not necessary that this Court agree with the Board's decision. *Lafferty*, 46 S.W.3d at 752. This Court is only empowered to determine whether the Board exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. *See, e.g., Fallin v. Knox Co. Bd. Of Comm'rs*, 656 S.W.2d 228, 342-43 (Tenn. 1983). Tennessee courts have defined "material evidence" as that "material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." *Fuller v. Tennessee-Carolina Trans. Co.*, 471 S.W.2d 953, 956 (Tenn. Ct. App. 1970). "Substantial evidence" has been defined as "such evidence as reasonable minds might accept as adequate to support a conclusion." *Gluck v. Civil Service Comm.*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999) (citing *Pace v. Garbage Disposal Dist.*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965)). In the context of a writ of certiorai proceeding, our Supreme Court has clarified that both terms–"material evidence" and "substantial evidence"–are used interchangeably to indicate the presence, or lack thereof, of a rational basis for the actions taken by an administrative board. *Tennessee Cartage Co. v. Pharr*, 199 S.W.2d 119, 120 (Tenn. 1947). As stated by this Court in *Hohenberg Bros. Co. v. Missouri Pac. R.R. Co.*, 586 S.W.2d 117 (Tenn. Ct. App. 1979), our review of the evidence is merely "a search of the record to ascertain if material evidence is present to support the verdict. It matters not...where the weight or preponderance of the evidence lies under a material evidence review." *Id*. at 119 (citing *Tennessee Cartage Co*, 199 S.W.2d at 120).

Utilizing our limited scope of review, we conclude that the Board in this case followed its procedure to first determine whether the Appellants were, in fact, "affected persons." Based upon the definition of "affected person," *supra*, we conclude that the Board's determination that Appellants were not affected persons, within the meaning of the policy and code provisions, was correct. From our review, the Board's action was not outside its jurisdiction, and was not arbitrary. Rather, the Board followed its stated procedure and there was material evidence to support its decision. From the totality of the circumstances, we conclude that the trial court correctly found that the Appellants' were not "affected persons," so as to have standing. However, even if we assume, that the Appellants' were "affected persons," we nonetheless conclude that the issue raised was rendered moot by the Board's April 8, 2008 adoption of the new policy concerning mosquito control.

## Mootness

A case will be considered moot if it no longer serves as a means to provide some sort of relief to the party who may prevail or if it no longer presents a present, live controversy. *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945). Where a matter has been resolved, that claim must be dismissed as moot. *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App.1996).

A case is not justiciable if it does not involve a genuine, continuing controversy requiring the adjudication of presently existing rights. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct.

App.1998). A moot case is one that has lost its justiciability because it no longer involves a present, ongoing controversy. *McCanless* ,188 S.W.2d at 747. A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party. *Knott v. Stewart County*,207 S.W.2d 337, 338-39 (Tenn. 1948). The determination of whether a case is moot is a question of law, *See, e.g., Orlando Residence, Ltd. v. Nashville Lodging Co.*, No. M1999-00943-COA-R3-CV, 1999 WL 1040544, at *3 (Tenn. Ct. App. Nov.17, 1999) (No Tenn. R.App. P. 11 application filed), which decision is reviewed *de novo* with no presumption of correctness. *Id*.; *Campbell v. Florida Steel Corp*., 919 S.W.2d 26, 35 (Tenn.1996). Unless the case fits within one of the recognized exceptions to the mootness doctrine, courts will dismiss a question or a claim that has become moot.

Courts have recognized several exceptions to the mootness doctrine. Exercising their discretion, Courts have declined to dismiss cases when: (1) the issue involves important public interests, *McIntyre v. Traughber*, 884 S.W.2d at 137, *Dockery v. Dockery*, 559 S.W.2d 952, 954 (Tenn. Ct. App.1977); (2) when the issue is important to the administration of justice, *State ex rel. Anglin v.. Mitchell*, 596 S.W.2d 779, 782 (Tenn.1980); and (3) when an issue is capable of repetition but will evade judicial review. *Id*.; *see also New Rivieria Arts Theatre v. State*, 412 S.W.2d 890, 893 (Tenn. 1967).

In the instant case, the Appellants' petition concerns the mosquito control policy that was in effect on July 23, 2005–the date of the Appellants' letter to Dr. Bailey. The letter, as set out above, specifically states that, "[w]e...request a decision regarding the **current policies** for mosquito control." (Emphasis added). The letter goes on to state that, "[w]e are concerned that the health risks of spraying pesticides have not been weighed and that the **current** program could have a stronger emphasis on preventative methods." (Emphasis added). In addition to asking for a decision on the current mosquito control policy, the Appellants asked "for the creation of written policies specifically outlining the requested changes to policies...before spraying takes place in Davidson County **in 2005**." (Emphasis added).

On April 8, 2008, the Board formally adopted a new mosquito-control policy. As a result, the 2005 policy, which is the policy the Appellants sought to revise, became ineffective. In short, the Appellants' letter to Dr. Bailey seeks changes to a mosquito control policy that is no longer in effect. Consequently, any decision from this Court to change the 2005 policy would be insignificant because the 2005 policy has been replaced with a new and completely different policy. Moreover, because the new policy, as set out above, eliminates mosquito spraying unless there is a documented threat to the public, and because there is no documented threat in evidence, there is no present, live controversy regarding the mosquito control policy. Therefore, we conclude that the issues raised by Appellants concerning the now ineffective 2005 policy are moot. Concerning the exceptions to the mootness doctrine, *supra*, we conclude that none are applicable to the case at bar. Although we concede that mosquito control, and particularly the method and manner a municipality uses to achieve that goal, is a matter of public interest, with the passage of the 2008 policy, it is clear that Davidson County has prioritized the general public's safety in its decision to spray only when there is a true threat to public health.

For the foregoing reasons, we affirm the order of the trial court.  Costs of this appeal are assessed to the Appellants, Rachel Sumner, Michele Flynn, Eleanor Snyder, Bruce Wallenstein, Bruce Wood, and their respective sureties.


_____

J. STEVEN STAFFORD, J.