IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 17, 2018 Session

## RANDALL HOLT ET AL. V. BILLY KIRK ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-002144-15  Jerry Stokes, Judge**

_____

**No. W2017-00847-COA-R3-CV**

_____

Residential property owners sued their neighbors alleging multiple causes of action, including intentional infliction of emotional distress, false arrest, and assault.  The jury rendered a verdict in favor of the plaintiffs, which was approved by the trial court.  On appeal, the defendant contends that the trial court erred in denying pre-trial motions for summary judgment, excluding relevant evidence at trial, determining a potential witness was competent to testify, refusing to grant a directed verdict or a mistrial, failing to order a new trial when the verdict was against the weight of the evidence, and refusing to suggest a remittitur.  After a careful review of the record, we find no reversible error.  So we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., joined.  BRANDON O. GIBSON, J., not participating.

Gary L. Jewel and Toof Brown, Memphis Tennessee, for the appellant, Billy Kirk.

Marti L. Kaufman, Memphis Tennessee, for the appellee, Randall Holt.

## OPINION

### I.

### A.

Randall and Sheila Holt built their dream home in rural Collierville, Tennessee, across the street from Billy and Laura Kirk.  According to the Holts, in 2009, the Kirks

began a campaign of harassment that escalated into what the trial court would later describe as a "reign of terror."

On December 28, 2011, in the Chancery Court for Shelby County, Tennessee, the Holts[1] filed a complaint against the Kirks. Based on a litany of alleged wrongful acts, the complaint sought injunctive relief and recovery of both compensatory and punitive damages for at least twelve causes of action. The Kirks denied the allegations and asserted their own counterclaim for damages.[2] Later, the chancery court transferred the case to the circuit court.

The Kirks moved for summary judgment three times with marginal success. The court granted summary judgment in their favor only on trespass and any assault claim premised on allegations that Laura Kirk threatened to shoot Randall Holt. In all other respects, the court denied the motions.

Still, by the time of trial, the issues in the case had narrowed substantially. The jury heard evidence on three claims: intentional infliction of emotional distress, false arrest, and assault. At the close of all the proof, the court granted a directed verdict on false arrest, denied the Kirks' motion for a mistrial, and allowed the other two claims to go to the jury.

B.

The Holts and the Kirks have lived across the street from each other for over twenty years. Each family has a five-acre lot fronted by a twelve and one-half foot public right of way running along the street. In 1987, the Kirks moved into the neighborhood followed by the Holts in 1995. A few years later, Randall Holt's parents, Ray and Martha Holt, bought the property next door to the Kirks.

By all accounts, the parties had an amicable relationship for many years. But after Ray Holt died in 2009, everything changed. Representatives of the sheriff's office or the fire department appeared at the Holts' home on a regular basis to investigate unsubstantiated complaints. Randall Holt explained the Kirks called the fire department so often, "that I go to breakfast with them. That's how well I know the firemen." Sheila Holt claimed the sheriff's department visited on a "weekly/monthly" basis. Even the health department inspected the Holt property three times. None of the investigations uncovered any wrongdoing by the Holts.

---

[1] Martha Holt, Mr. Holt's mother, was also named as a plaintiff, but she later withdrew her claim.

[2] The Kirks dismissed their counterclaim before trial.

2

Laura Kirk was overtly hostile. She constantly watched and photographed the family. And she often appeared agitated. She routinely shouted obscenities at them and made rude gestures in view of the Holts' children. The children were frightened by her behavior. The Holts were concerned that she appeared unstable. They stopped allowing the children to roam freely in the front yard or in the neighborhood. When Mr. Holt confronted Ms. Kirk, he discovered that she was angry about inconsequential matters like misdirected mail and unsolicited phone calls. Two neighbors and a meter reader for the water company confirmed at trial that Ms. Kirk had developed an intense dislike for Sheila Holt, in particular.

In the spring of 2011, Billy Kirk placed multiple large rocks in the right of way in front of his property directly across from the Holts' driveway. The rocks impeded the Holts' ability to turn into their driveway when hauling supplies on their trailer. Several times, Mr. Holt asked Ms. Kirk if he could re-position the rocks. But she refused.

On July 27, 2011, during a visit with Mr. Holt's mother, the Holts saw Mr. Kirk in his yard. Mr. Holt asked Mr. Kirk to move some of the rocks in the right of way. But before Mr. Kirk could answer, his wife intervened, adamantly refusing to cooperate. Frustrated, Mr. Holt declared that he would move the rocks himself.

At first, the Kirks did not believe him. But when they saw Mr. Holt at the right of way in his tractor, they came to investigate. While the Kirks watched, Mr. Holt used his tractor blade to push four rocks back twenty-five feet and remove two metal fence posts holding the rocks in place. According to the Holts, the entire incident lasted no more than a few minutes, and no one was injured. Mr. Kirk, on the other hand, claimed that Mr. Holt drove his tractor dangerously close to where he was standing. Fearing injury, Mr. Kirk tried to stop the tractor with his arm and severely sprained his left wrist and thumb.

The Kirks reported the incident to the sheriff's office without mentioning any injury. A deputy sheriff questioned the Holts that night and again a week later. But no action was taken.

A couple of weeks later, when the Holts were out of town, Mr. Kirk added three large boulders to the right of way backed by two utility poles. The Kirks also installed four surveillance cameras. At some point, the Holts had also installed video cameras at their home. The next time the Kirks were out of town, Mr. Holt removed the new obstructions, which was recorded by the Kirks' video cameras. Upon their return, the Kirks again reported Mr. Holt to the sheriff's department. This time Mr. Kirk claimed that Mr. Holt had assaulted him during the initial rock removal a month earlier.

Ms. Holt later spotted Mr. Kirk and an unknown man laughing and walking along her front fence, taking measurements. When the stranger jumped over the fence, she

3

confronted him and discovered that he was a detective, assigned by the sheriff's department to investigate Mr. Kirk's charges. According to Ms. Holt, Mr. Kirk told her that he was going to ruin the Holts.

An arrest warrant was subsequently issued for Mr. Holt. Mr. Kirk notified Mr. Holt's employer about the arrest. Mr. Kirk later admitted that he did so hoping that Mr. Holt would get a "pink slip" or be forced to settle. But Mr. Holt was not fired, and the criminal charges were eventually dismissed.

After the arrest, Mr. Kirk continued to harass the Holts. Both Randall and Sheila Holt reported that he would follow them in his truck. And on several occasions he abruptly cut Ms. Holt off as she was entering or exiting her driveway, almost causing an accident. The Holts became so concerned that they would not allow their daughters, then teenagers, to drive near their home. Mr. Kirk also began openly carrying a handgun. He removed it from its holster and waved it at the Holts whenever they passed by.

The Holts maintained that they were severely frightened by the Kirks' behavior. They lost sleep and were unable to eat. Mr. Holt had nightmares. Ms. Holt lost fifty pounds, and her hair fell out. They also became withdrawn and paranoid, hiding in their home and installing additional video cameras at their house and in their cars.

Mr. Kirk denied most of the Holts' claims, even though their testimony was often corroborated by other evidence. He contended that Ms. Holt was the neighborhood troublemaker. In his words, "[s]he has got a way of getting her way." And he accused Ms. Holt of trying to hit him with her car three times. Ms. Kirk did not testify. The Kirks submitted evidence that she had been diagnosed with dementia and paranoia.

The jury returned a verdict in favor of the Holts, finding that Mr. Kirk had assaulted Mr. Holt and intentionally inflicted emotional distress on the Holts. The jury found Ms. Kirk not liable. The jury assessed $125,000 in compensatory damages for Mr. Holt and $75,000 for Ms. Holt, but no punitive damages. The trial court approved the verdict and entered judgment accordingly.

Both sides moved for a new trial, although the Holts later withdrew their motion. In the alternative, Mr. Kirk requested a remittitur. The court denied Mr. Kirk's post-trial motions. And this appeal by Mr. Kirk followed.

## II.

Initially, we address Mr. Holt's request that we dismiss this appeal due to Mr. Kirk's failure to comply with the briefing requirements in Rule 27 of the Tennessee Rules of Appellate Procedure. We agree that Mr. Kirk's brief is deficient in several respects. Most glaring is the lack of "appropriate references to the record" or a "concise

4

statement of the applicable standard of review." *See* Tenn. R. App. P. 27(a)(6), (a)(7)(B); *see also* Tenn. Ct. App. R. 6(a)(4). But Mr. Kirk attempted to correct his mistakes in his reply brief, and more importantly, Tennessee has a "clear policy" favoring adjudication of disputes on the merits. *See Norton v. Everhart*, 895 S.W.2d 317, 322 (Tenn. 1995). So, rather than dismissing this appeal, we exercise our discretion to waive the briefing requirements so that we may reach the merits. *See Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) ("[T]his Court, in the discretion afforded it under Tenn. R. App. P. 2, may waive the briefing requirements to adjudicate the issues on their merits.").

## A. SUMMARY JUDGMENT

Mr. Kirk's initial issue is that the trial court erred in not granting summary judgment in his favor on the claims for intentional infliction of emotional distress, assault, and false arrest. A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review a summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. But we will not review the denial of a motion for summary judgment based on material factual disputes after a jury verdict. *In re Estate of Blackburn*, 253 S.W.3d 603, 611 (Tenn. Ct. App. 2007). The trial court's decision is only appealable here if the court denied the motion on a different basis. *See Beard v. Branson*, 528 S.W.3d 487, 494 n.12 (Tenn. 2017).

Mr. Kirk points out that the trial court failed to state the grounds for its decision. *See* Tenn. R. Civ. P. 56.04. Tennessee Rule of Civil Procedure 56.04 "requires the trial court, upon granting or denying a motion for summary judgment, to state the grounds for its decision." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). But when the absence of stated grounds does not significantly impair appellate review, we may, in our discretion, decline to vacate the order. *See id.* at 314. We do so here. *See Davidson Pabts, LLC v. Worsham*, No. M2014-01061-COA-R3-CV, 2015 WL 4115174, at *3 (Tenn. Ct. App. May 18, 2015) (determining that the court's failure to state legal grounds was harmless error when the legal grounds were readily discernable from the record).

It is readily apparent that the trial court denied the motions for summary judgment on the claims for intentional infliction of emotional distress and assault based on material factual disputes. The Holts demonstrated genuine issues of material fact on whether the Kirks' conduct rose to the level of outrageous conduct and whether the Holts feared bodily harm. *See Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012) (requiring proof the defendant's conduct was "so outrageous that it is not tolerated by

5

civilized society"); *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 371 (Tenn. 2011) (concluding that "if a defendant intends to create an apprehension of harm in the plaintiff, he or she has committed the intentional tort of assault"). More importantly, the jury returned a verdict on both of these claims. Thus, the court's refusal to grant summary judgment on the intentional infliction of emotional distress and assault claims is not appealable. *See In re Estate of Blackburn*, 253 S.W.3d at 611.

But the court's denial of summary judgment on the false arrest claim requires separate analysis. The false arrest claim was based on allegations that Mr. Kirk lied to the sheriff's department about the assault. In Tennessee, a private individual cannot be held liable for false arrest or imprisonment solely for providing information to the police. *See Roberts v. Essex Microtel Assocs., II, L.P.*, 46 S.W.3d 205, 213 (Tenn. Ct. App. 2000). To create a jury issue on this claim, the plaintiff must present some evidence that the defendant "command[ed], direct[ed], advise[d] or request[ed] the arrest and imprisonment." *Hertzka v. Ellison*, 8 Tenn. App. 667, 670 (1928); *see also* RESTATEMENT (SECOND) OF TORTS § 45A cmt. c (AM. LAW INST. 1965) ("It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them."); *Randall v. Lemke*, 726 N.E.2d 183, 186 (Ill. Ct. App. 2000) (holding that a private individual may not be held liable for false arrest unless "he either (1) directed the officer to arrest the plaintiff; or (2) procured the arrest by giving information that was the sole basis for the arrest").

The Kirks argued that a valid arrest warrant precluded the false arrest claim. The Holts did not come forward with evidence that Mr. Kirk did anything more than make a false report. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2452 (2016) (holding that the nonmoving party may not rest on the allegations in its pleadings but must come forward with specific facts showing that there is a genuine issue for trial). In the absence of any evidence that Mr. Kirk "command[ed], direct[ed], advise[d] or request[ed] the arrest[,]" Mr. Kirk was entitled to summary judgment in his favor. *See Hertzka*, 8 Tenn. App. at 670. Thus, the trial court erred in denying the motion for summary judgment on false arrest. But we conclude that the error was harmless because the court later granted a directed verdict on this claim. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

## B. EVIDENTIARY ISSUES

Mr. Kirk also raises two evidentiary issues. We review evidentiary decisions for an abuse of discretion. *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015), *as revised on*

*denial of reh'g*, (Aug. 26, 2015). We review a trial court's determination that a witness is competent under the same standard. *State v. Carruthers*, 35 S.W.3d 516, 576 (Tenn. 2000). "A trial court abuses its discretion by applying an incorrect legal standard or reaching an illogical or unreasonable decision that causes an injustice to the complaining party." *White*, 469 S.W. 3d at 527.

## 1. Exclusion of Documentary Evidence

The trial court excluded an uncertified copy of Mr. Holt's criminal verdict form from evidence at trial. Under our evidentiary rules, an uncertified court document can be authenticated if the proponent presents "evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). The necessary evidence can be provided by the testimony of a witness with knowledge. Tenn. R. Evid. 901(b)(1). This court has previously approved the admission of uncertified court documents upon the testimony of a witness with knowledge accompanied by court clerk stamps and other "indicia of reliability." *See State Dep't of Children's Servs. v. J.C.*, No. E2008-00510-COA-R3-PT, 2008 WL 3539736, at *14 (Tenn. Ct. App. Aug. 14, 2008). We find no abuse of discretion in the trial court's decision to exclude the criminal verdict form. Mr. Kirk did not present a knowledgeable witness to testify about the authenticity of the document. And it lacked sufficient "indicia of reliability." We also decline Mr. Kirk's invitation to create an exception to the authentication requirement in false arrest cases.

## 2. Competency of a Witness

Mr. Kirk contends that the trial court erred in refusing to declare his wife an incompetent witness. In Tennessee, everyone is presumed competent to testify unless a specific rule or statute provides otherwise. Tenn. R. Evid. 601. Mr. Kirk has pointed to no rule or statute that would render Ms. Kirk an incompetent witness. His sole argument is that her dementia rendered her incompetent to testify. But mental status does not automatically preclude testimony. *State v. Caughron*, 855 S.W.2d 526, 537-38 (Tenn. 1993). Rule 601 allows "[v]irtually all witnesses" including "mentally incompetent persons" to testify. Tenn. R. Evid. 601 advisory comm'n cmt. A prospective witness with relevant information and the ability to tell the truth is competent to testify in Tennessee. *Id.* 602, 603.

The trial court did not abuse its discretion in declining to declare Ms. Kirk incompetent to testify. Mr. Kirk presented evidence that his wife experienced memory lapses, confusion, and agitation. These facts go to the weight of her testimony, not her competency. *See State v. Graham*, No. E2014-01267-CCA-R3-CD, 2016 WL 892013, at *13 (Tenn. Crim. App. Mar. 8, 2016) (holding that inability to remember details affected weight of testimony, not competency to testify); *State v. Culpepper*, No. M2005-00685-CCA-R3-CD, 2006 WL 1896358, at *7 (Tenn. Crim. App. July 7, 2006) (holding failure

to recall events correctly did not render witness incompetent but went to the weight of the testimony); *see also* Tenn. R. Evid. 617 (allowing any party to demonstrate that a witness's capacity was impaired either "at the time of an occurrence or testimony"). She remained able to tell the truth.

## C. DIRECTED VERDICT

At the conclusion of the proof, the court denied the Kirks' motion for a directed verdict on intentional infliction of emotional distress. "A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the evidence." *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006). In reviewing the trial court's decision, we must "take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence." *Id.* We do not evaluate the credibility of witnesses or weigh the evidence. *Id.* If the evidence is disputed or more than one conclusion may be drawn from the evidence, the motion must be denied. *Id.*

A plaintiff claiming intentional infliction of emotional distress must prove that the defendant's conduct "was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury." *See Rogers*, 367 S.W.3d 205. On appeal, Mr. Kirk argues that the Holts failed to prove sufficiently outrageous conduct. We disagree.

From our review of the record, a reasonable juror could find that the Kirks' actions, viewed in toto, met the high standard of outrageous conduct. *See* RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (AM. LAW INST. 1965) (explaining that liability is "found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). For years, the Kirks made unfounded reports about the Holts to various county agencies. Mr. Kirk falsely accused Mr. Holt of assault and then tried to have him fired. He also used his truck and a handgun as weapons of intimidation. These actions went beyond "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *See id.* While each individual act may not qualify as outrageous, taken together, this conduct could reasonably be deemed utterly intolerable in civilized society. *See Levy v. Franks*, 159 S.W.3d 66, 83-86 (Tenn. Ct. App. 2004) (concluding that neighboring property owner's actions, viewed as a whole, rose to the level of outrageous conduct).

We also find material evidence to support the two remaining elements of this tort. The record is replete with evidence that the Kirks' conduct was intentional. And the Holts testified to the severity of their injuries, including anxiety, humiliation, sleeplessness, weight loss, and personality changes. Taking the strongest legitimate view

8

of the evidence in favor of the Holts, as we must, we find no error in the trial court's refusal to grant a directed verdict. *See Johnson*, 205 S.W.3d at 370.

## D. MISTRIAL

The Kirks moved for a mistrial after the court granted a directed verdict on false arrest, arguing that the jury would be unable to separate the evidence about the arrest from their consideration of the remaining claims. The trial court denied the motion. We review a trial court's refusal to grant a mistrial for an abuse of discretion. *Hunter v. Ura*, 163 S.W.3d 686, 709 (Tenn. 2005). We will not reverse the court's decision unless it was "against logic or reasoning, and caused an injustice or injury to the party complaining." *McCullough v. Johnson City Emergency Physicians, P.C.*, 106 S.W.3d 36, 47-48 (Tenn. Ct. App. 2002).

Here, we find no abuse of discretion in the trial court's decision. Mr. Kirk's false report of assault and the resulting investigation were also relevant to the Holts' claims of intentional infliction of emotional distress and assault. The jury could consider Mr. Kirk's false report and its effect on the Holts as part of a pattern of intentional conduct designed to cause emotional distress and fright.

## E. POST-TRIAL MOTIONS

### 1. Motion for New Trial

Mr. Kirk also challenges the court's denial of his motion for a new trial because the verdict was against the weight of the evidence. *See* Tenn. R. Civ. P. 59.06. Acting as the thirteenth juror, the trial court weighed the evidence and approved the jury verdict. In so doing, the court expressly found Mr. Kirk was not a credible witness. On appeal, our task is limited to a review of the record to determine if the jury verdict is supported by any material evidence. *See* Tenn. R. App. P. 13(d); *Cooper v. Tabb*, 347 S.W.3d 207, 217 (Tenn. Ct. App. 2010). "It matters not a whit where the weight or preponderance of the evidence lies under a material evidence review." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 423 (Tenn. 2013) (quoting *Hohenberg Bros. Co. v. Mo. Pac. R.R. Co.*, 586 S.W.2d 117, 119-20 (Tenn. Ct. App. 1979)). "Material evidence" is evidence "which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." *Id.* at 422 (quoting *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (Tenn. 1905)). We must take the strongest legitimate view of the evidence supporting the verdict, including all reasonable inferences, assume the truth of the supporting evidence, and discard all countervailing evidence. *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978). If there is any material evidence to support the verdict, we must affirm. *Id.*

We conclude that the jury verdict is supported by material evidence. As we discussed previously, for years Mr. Kirk made unfounded reports about the Holts. He also tried to have Mr. Holt fired and used his truck and later a handgun to frighten and intimidate the Holts. Even at trial, he continued to falsely accuse the Holts of wrongdoing. The Holts suffered severe emotional distress as a result of his behavior and feared imminent bodily harm.

## 2. Remittitur

Finally, Mr. Kirk contends that the trial court should have suggested a remittitur because the damage award was excessive. If a trial court is dissatisfied with the jury's award of damages, the court may suggest a remittitur. *See* Tenn. Code Ann. § 20-10-102(a) (2009); *Meals ex rel. Meals*, 417 S.W.3d at 422. The trial court determined that the award was within the range of reasonableness and approved the verdict. So here again we employ a "material evidence" standard of review. *Meals ex rel. Meals*, 417 S.W.3d at 421-22. If there is any material evidence to support the award, we will not disturb it. *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125, 129 (Tenn. 1980).

After carefully reviewing the record, we conclude that the amount awarded, $200,000, is supported by material evidence and is within the range of reasonableness. The Holts' claim involved non-economic damages. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 715 (Tenn. Ct. App. 1999) (acknowledging that pain and suffering and loss of enjoyment of life are non-economic damages). A jury has wide latitude in assessing this type of damage. *Meals ex rel. Meals*, 417 S.W.3d at 425. "We trust jurors to use their personal experiences and sensibilities to value the intangible harms such as pain, suffering, and the inability to engage in normal activities." *Id.* We cannot say that there is no material evidence to support the jury verdict. The Holts lived in fear. Their fear manifested itself in both physical and emotional changes. They were unable to sleep or eat. Sheila Holt lost fifty pounds, and her hair began falling out. They became paranoid and less open and trusting. Randall Holt had nightmares. Sheila Holt had trouble concentrating and was more withdrawn. And for years they were robbed of one of the normal pleasures of life, living peacefully in their home.

## F. FRIVOLOUS APPEAL

Mr. Holt seeks an award of attorney's fees as damages for a frivolous appeal. *See* Tenn. Code Ann. § 27-1-122 (2017). The statute authorizing an award of damages for a frivolous appeal "must be interpreted and applied strictly so as not to discourage legitimate appeals." *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977) (citing the predecessor to Tennessee Code Annotated § 27-1-122). A frivolous appeal is one "utterly devoid of merit." *Combution Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978). We do not find this appeal devoid of merit or perceive that it was taken solely for delay. Thus, we decline to award attorney's fees on this basis.

## III.

We affirm the judgment. We will not review the trial court's denial of summary judgment based on factual disputes after a jury trial. Although the trial court erred in denying summary judgment on the false arrest claim, the error was harmless because the court ultimately granted a directed verdict on false arrest. And the court did not abuse its discretion either in excluding the unauthenticated criminal verdict form as an exhibit at trial or in determining Laura Kirk was competent to testify.

The trial court did not err in refusing to grant a directed verdict on intentional infliction of emotional distress. Reasonable minds could find that the Kirks' bullying tactics, taken as a whole, met the high standard of outrageous conduct. The court also did not err in refusing to grant a mistrial. The evidence surrounding Mr. Holt's arrest remained relevant to the remaining claims.

Finally, the court also did not err in denying Mr. Kirk's post-trial motions. The jury verdict finding Mr. Kirk liable for intentional infliction of emotional distress and assault is supported by material evidence. The damage award is also supported by material evidence and within the range of reasonableness.


_____
W. NEAL MCBRAYER, JUDGE

11